United States Courts
Southern District of Texas
FILED

AUG 29 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re:

HALCON RESOURCES, *et al.*,
Debtors.

Chapter 11
Case No. 19-34446(DRJ)

## EMERGENCY Motion to Extend Various Plan Voting and Objection Deadlines

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER \_\_\_\_\_, 2019 AT \_\_\_\_ AM/PM (CDT) IN COURTROOM 400, 4th FLOOR, 515 RUSK STREET, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN SEPTEMBER 6, 2019.**

Unsecured Creditor Michael Sammons[1], *pro se*, hereby files this **EMERGENCY MOTION** seeking a 14 day extension to the following deadlines:

---

[1]   Mr. Sammons has long been retired, but as the owner of $865,000 in Halcon Resources unsecured notes has a strong interest in this case.

(1) **September 6, 2019** deadline to vote to accept or reject the Plan;

(2) **September 12, 2019** deadline to object to the Disclosure Statement and Plan.

In support thereof, Mr. Sammons would show as follows:

## FACTS

(1) Interactive Brokers ("IB"), one of the largest brokers in the world, is unaware of any voting forms or deadlines which, under the Plan, must be provided to its customers who own Halcon unsecured notes. See <u>Exhibit A-1 and A-2</u> attached, Affidavit of Michael Sammons & Affidavit of Elena Sammons;

(2) According to the Office of the U.S. Trustee, an Unsecured Creditors Committee ("UCC") would normally have already been appointed in this case[2] - unfortunately one prospective member withdrew her application necessitating a delay to find and vet a willing replacement.

---

[2] See 69 Am. Bankr. L.J. 431, 449 (1995) ("The mandatory appointment of a creditors' committee was intended to provide dynamic tension with the debtor that would stimulate the reorganization process through effective and efficient oversight and negotiation."); 7 COLLIER ON BANKRUPTCY ¶1102.02[1], p. 1102-6 (Alan N. Resnick & Henry J. Somme reds., 16th ed.) ("Appointment of unsecured creditors' committee is mandatory and the United States trustee must appoint one in all chapter 11 cases, assuming that there are creditors willing to serve.").

## ARGUMENT

### No Notice to Interactive Broker Clients

Due process requires that adequate notice be provided before rights are extinguished. Based upon the attached sworn affidavits, owners of Halcon Resources 6.75% notes due 6/15/2023 held by IB have received no notice of these deadlines and have no way to vote on the Plan. While it is unclear whether the fault lies with the Debtors or IB, the indisputable fact is that the fault does not lie with any of the owners of Halcon notes held by IB.[3]

Perhaps the error will be corrected in the near future, but the voting documents state that they must be delivered by mail, signed, and returned in self-addressed envelopes for actual receipt by the September 6, 2019 deadline (now just five business days away).[4]

Under these circumstances the voting deadline should be extended 14 days to allow the Debtors agent, KCC, and IB to undertake whatever steps are necessary to deliver the voting forms to IB customers holding Halcon unsecured notes and allow them sufficient time to review, vote, and return.

---

[3] The debtors agent, KCC, LLC, handling the distribution/voting stated to Mr. Sammons that he could not vote without such vote going through IB; i.e., that Mr. Sammons could not, as he requested, simply fill out a blank voting form, sign it, and email it to KCC, LLC. See **Exhibit A-1**, Affidavit of Michael Sammons, attached.

[4] Even if the voting packet could arrive early next week, which itself seems impossible (Monday is Labor Day and nothing has been prepared or mailed yet by IB), the return by USPS by that Friday is all but impossible – indeed, by the time the packets are sent out and received, some voters might understandably decide not to even try and return them given the deadline could not possibly be satisfied.

### Slight Delay in Appointing Unsecured Creditors Committee

In addition to a 14 day extension of the September 6, 2019 Plan voting deadline, a 14 day extension of the September 12, 2019 objection deadline (disclosure statement and plan) would allow a UCC to be appointed and to undertake an adequate investigation of any appropriate concerns.[5]

The importance and role of an Unsecured Creditors Committee is central to the entire Chapter 11 structure envisioned by Congress. Indeed, commentators have opined that appointment of a UCC is mandatory (as long as there are creditors willing to serve). *Supra*, note 2.

But for the unfortunate and last minute withdrawal of one approved and vetted UCC applicant, a UCC would have already been appointed – but that last minute withdrawal has now caused an unavoidable week or so delay in the appointment of a formal UCC.[6]

### A Clear Need to Investigate the Disclosure Statement

Several unsecured noteholders have already voted against the Plan because it appears that the Liquidation Statement in the Disclosure Statement, Dkt. 19, pg. 395, is materially inaccurate (understates liquidation values, while overstating liquidation expenses) and a 1129(a)(7) objection exists.

---

[5] The pro se Mr. Sammons has raised various issues in his Objection to the Disclosure Statement and the Plan. Dkt. 171. But these issues are best considered, investigated, and addressed by a UCC.

[6] Upon information and belief, the necessary prospective member creditors willing to serve on a UCC have now been, or soon will be, vetted for formal appointment.

A colorable 1129(a)(7) issue would appear to exist:

(1)  The Debtors state that the value of the new stock to be issued under the Plan will represent a recovery to the noteholders of 22.1%. Dkt. 19, pg. 15. However, the Halcon notes continue to actively trade at a price indicating only a 12% recovery. See Exhibit B, Recent Halcon Note Trades. A "market tested[7]" Plan recovery rate of only 12% vs. an (understated) liquidation value recovery rate of 17.9% clearly implicates 1129(a)(7).[8]

(2)  While the Plan results in issuance of new stock representing a 12% recovery to noteholders (22.1% recovery according to the Plan), the Objection filed at Dkt. 171 forcefully argues that a Chapter 7 liquidation of Halcon would result in an approximate and far superior 50% recovery for those same noteholders.

---

[7] See In re VFB LLC v. Campbell Soup Co., 482 F.3d 624, 633 (3d Cir. 2007). ("Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.")

[8] The reason is a phenomenon which currently exists for several comparable Permian E&P public companies, and that is that the stock market, at least for companies deemed with poor management (cf. Halcon's two Chapter 11 filings in 3 years), is valuing production at market rates ($45,000 per bbl oil/day; $20,000 per bbl NGL b/day; $2,250 per Mcf NG/d) but Permian acreage as low as $0/acre ("managements that have *always* lost money with good Permian acreage, will *always* lose money"). As **Exhibit C** attached shows, expert Andrew Dittmar of DrillingInfo.com, calculated the value of Halcon's production at $574 million as of June 23, 2019. There is a ready market for flowing oil/NGL/NG (with numerous streaming/ royalty companies as buyers). Applying a 20% discount to the market value of such production, equals roughly the Plan exit EV of $450 mil (Dkt. 19, pg. 104) - leaving $0 value for Halcon's 57,000 Permian acres (which would bring at least $5,000/acre net at auction for an additional $285 mil for a total net recovery of 50% to noteholders (vs. the Plan's inflated 22.1% recovery)). Expert testimony would only be required to substantiate these production market values and acreage auction values.

In this case there is a need for a UCC – some Halcon creditors have already voted against the plan – and Congress certainly expected a UCC in such disputed Chap. 11 cases – a short extension is needed to appoint a UCC.

## CONCLUSION

Due process requires extending the deadlines affecting the rights of Halcon noteholders, several of whom intend to vote against the Plan, to (a) allow *all* noteholders, including those with Halcon notes held by Interactive Brokers, to receive notice of this case and a fair opportunity to vote on the Plan and/or object to the Disclosure Statement and Plan, and (b) to allow appointment of a formal UCC to investigate the 1129(a)(7) issues and and other concerns of those creditors who have or might vote against the Plan.

**WHEREFORE**, the September 6, 2019 deadline for voting to accept or reject the Plan, and the September 12, 2019 deadline for objecting to the Disclosure Statement and/or the Plan, should be extended 14 days each.

Respectfully submitted,

*/s/ Michael Sammons/*
Michael Sammons
1013 10th St # B
Galveston, TX  77550
210-858-6199
michaelsammons@yahoo.com

### Certificate of Service

A true copy of this Objection was served by email on all parties; in addition, the Court Clerk is also requested to file this Objection in the ECF System for all parties; both this 29th day of August, 2019.

*/s/ Michael Sammons/*
Michael Sammons