**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
09/05/2019

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HALCÓN RESOURCES** | § | |
| **CORPORATION,** *et al.*, | § | **Case No. 19-34446 (DRJ)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | **Re:  Docket No. 23** |

**FINAL ORDER (I) AUTHORIZING DEBTORS
(A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3),
AND 364(e), (B) TO UTILIZE CASH COLLATERAL PURSUANT
TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361,
362, 363, 364, 503 AND 507(b), AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Halcón Resources Corporation ("**Borrower**") and its

affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the

above-captioned cases, pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2),

364(c)(3), 364(e), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"),

Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy

Rules**"), the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**") and

the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**")

promulgated by the United States Bankruptcy Court for the Southern District of Texas (the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Halcón Resources Corporation (0684), Halcón Resources Operating, Inc. (4856), Halcón Holdings, Inc. (5102), Halcón Energy Properties, Inc. (5292), Halcón Permian, LLC (6153), Halcón Field Services, LLC (0280), and Halcón Operating Co., Inc. (3588).  The Debtors' mailing address is 1000 Louisiana St., Suite 1500, Houston, TX 77002.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Junior DIP Documents (as defined below).

"**Court**"), seeking entry of an interim order and a final order (this "**Final Order**") providing, among other things:

A.      authorization for the Borrower to obtain junior secured postpetition financing (the "**Junior DIP Financing**") on terms and conditions consistent with the material terms set forth in the DIP term sheet (the "**DIP Term Sheet**"), attached to the Motion at **Exhibit D**, and for all domestic subsidiaries of the Borrower (each a "**Guarantor**" and, collectively, the "**Guarantors**"; the Guarantors collectively with the Borrower, the "**Loan Parties**") to unconditionally guaranty, on a joint and several basis, the Borrower's obligations in connection with the Junior DIP Financing, consisting of a multiple-draw junior secured term loan facility (the "**Junior DIP Facility**"), in an aggregate principal amount not to exceed $35 million (the actual available principal amount at any time being subject to the terms and conditions set forth in the Junior DIP Documents (as defined below), the Interim Order (as defined below), and this Final Order, as applicable;

B.      authorization for the Loan Parties to execute and enter into the Debtor-in-Possession Credit Agreement among the Borrower, the lenders from time to time party thereto (collectively, the "**Junior DIP Lenders**") and Wilmington Trust, National Association, as agent thereunder (in such capacity, the "**Junior DIP Agent**"; the Junior DIP Agent together with the Junior DIP Lenders and the other Secured Parties (as defined in the Junior DIP Credit Agreement), the "**Junior DIP Secured Parties**"), substantially in the form attached to the Motion as **Exhibit A** (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Junior DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, that certain Fee Letter, by and

between the Debtors and the Agent (the "**Fee Letter**"), the Guaranty Agreement and the other Security Instruments (each as defined in the Junior DIP Credit Agreement), each to be dated as of the Closing Date, the "**Junior DIP Documents**") and to perform all such other and further acts as may be required in connection with the Junior DIP Documents;

       C.      authorization for the Loan Parties to grant adequate protection to the Prepetition RBL Secured Parties (as defined below) under, or in connection with, that certain Amended and Restated Senior Secured Revolving Credit Agreement, dated as of September 7, 2017 (as amended by that certain First Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of November 1, 2017, as further amended by that certain Second Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of February 2, 2018, as further amended by that certain Third Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of May 1, 2018, as further amended by that certain Fourth Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of July 12, 2018, as further amended by that certain Fifth Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of November 7, 2018, as further amended by that certain Sixth Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of November 16, 2018, as further amended by that certain Seventh Amendment to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of February 15, 2019, as further amended by that certain Eighth Amendment, Consent and Waiver to Amended and Restated Senior Secured Revolving Credit Agreement, dated as of May 9, 2019, and as further amended, supplemented or otherwise modified prior to the date hereof, the "**Prepetition RBL Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection

therewith, including, without limitation, the Guaranty Agreement and the other Security Instruments (each as defined in the Prepetition RBL Credit Agreement), the "**Prepetition Credit Documents**"),[3] by and among, *inter alia*, the Borrower, the lenders party thereto (the "**Prepetition RBL Lenders**") and JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, together with its successors in such capacity, the "**Prepetition RBL Agent**" and, together with the Prepetition RBL Lenders and the other Secured Parties (as defined in the Prepetition RBL Credit Agreement), the "**Prepetition RBL Secured Parties**");

D.      subject to the restrictions set forth in the Junior DIP Documents, the Interim Order, and this Final Order, as applicable, authorization for the Loan Parties to continue to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**") and all other Prepetition Collateral in which any of the Prepetition RBL Secured Parties have an interest, and the granting of the Adequate Protection Liens and Claims (as defined below) to the Prepetition RBL Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

E.      subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the liens and security interests arising therefrom;

F.      the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the Junior DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code on, and the granting of liens to secure the Secured Obligations (as defined in the Junior DIP Credit Agreement), on all prepetition and

---

[3] All "Collateral" securing the obligations under the Prepetition Credit Documents is collectively referred to as the "**Prepetition Collateral**."

postpetition property of the Loan Parties' estates and all proceeds thereof (including any Avoidance Proceeds (as defined below)), subject only to the Carve-Out, the Adequate Protection Liens and Claims, the Prepetition RBL Claims, the Prepetition RBL Liens (each as defined below), and certain permitted senior liens;

G.     the waiver of the Debtors' right to surcharge the Prepetition Collateral and the Junior DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and of any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

H.     modification of the automatic stay to the extent set forth herein and in the Junior DIP Documents; and

I.     due and appropriate notice of the Motion and the final hearing on the Motion (the "**Final Hearing**") having been served by the Debtors in accordance with the Interim Order; and it appearing that no other or further notice need be provided with respect to the final relief provided herein; and the Court having reviewed the Motion; and the interim hearing having been held by this Court on August 8, 2019 (the "**Interim Hearing**"), following which the Court entered the *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, 503 AND 507(b) AND (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 82] (the "**Interim Order**"); and the Final Hearing having been held by this Court on September 4, 2019; and the final relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties in interest in these chapter 11 cases (these "**Chapter 11 Cases**"); and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the final relief granted herein; and upon the record made by the Debtors in the Motion, in the *Declaration of Douglas McGovern in Support of Emergency Motion of Debtors for Interim and Final Orders Approving Postpetition Financing Arrangements and Use of Cash Collateral* (the "**McGovern Declaration**") filed contemporaneously therewith, in the *Declaration of Albert S. Conly in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on the date hereof and at the Interim and Final Hearings, and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*   The relief requested in the Motion is granted on a final basis in accordance with the terms of this Final Order.   Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.   This Final Order shall become effective immediately upon its entry.

2.      *Jurisdiction*.   The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Notice*.   Proper, timely, adequate and sufficient notice of the Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion, the relief sought at the Final Hearing, or the entry of this Final Order shall be required.

4.      *Corporate Authority*. As set forth in the McGovern Declaration, each Debtor has all requisite corporate power and authority to execute and deliver the Junior DIP Documents to which it is a party and to perform its obligations thereunder.

5.     *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 22 and 23 below, the Debtors admit, stipulate and agree that:

(a) (i) as of the date (the "**Petition Date**") of the filing of these Chapter 11 Cases, the Borrower and the guarantors under the Prepetition Credit Documents (such guarantors collectively, the "**Prepetition RBL Guarantors**") were justly and lawfully indebted and liable to the Prepetition RBL Secured Parties, without defense, counterclaim or offset of any kind, with respect to approximately $223.23 million in principal amount of loans outstanding and $1.77 million of undrawn letters of credit issued pursuant to, and in accordance with the terms of, the Prepetition Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition Credit Documents), charges, indemnities and  all other Secured Obligations (as defined in the Prepetition RBL Credit Agreement) incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Credit Documents, including amounts owing to any Prepetition RBL Secured Party pursuant to any Prepetition Secured Swap Agreement (as defined below) (collectively, the "**Prepetition RBL Debt**"), which Prepetition RBL Debt has been guaranteed on a joint and several basis by the Prepetition RBL Guarantors, (ii) the Prepetition RBL Debt constitutes the legal, valid and binding obligations of the Borrower and the Prepetition RBL Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition RBL Debt or any payments made to the Prepetition RBL Secured Parties or applied to, or paid on account of, the obligations owing

under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b) the liens and security interests granted to the Prepetition RBL Secured Parties (the "**Prepetition RBL Liens**") pursuant to, and in connection with, the Prepetition RBL Credit Agreement and the other Prepetition Credit Documents, are:  (i) valid, binding, perfected, enforceable liens and security interests in the Prepetition Collateral; (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) as of the Petition Date, subject and subordinate only to valid, non-avoidable liens permitted under the Prepetition RBL Credit Agreement that (A) were perfected as of the Petition Date or (B) were in existence immediately prior to the Petition Date and are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, to the extent that such permitted liens are senior to liens in favor of the Prepetition RBL Secured Parties (the "**Other Senior Liens**");

(c) by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition RBL Debt, none of the Prepetition RBL Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors;

(d) no claims or causes of action exist against, or with respect to, the Prepetition RBL Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

(e) the Debtors acknowledge and stipulate that substantially all of the Debtors' cash as of the Petition Date constitutes Cash Collateral of the Prepetition RBL Secured Parties;

(f) subject to paragraph 22 below, the Debtors absolutely and unconditionally (i) release and forever discharge and acquit the Prepetition RBL Secured Parties and their respective Representatives (collectively, the "**RBL Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case, arising on or prior to the date of this Final Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to the Prepetition Credit Documents, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the Prepetition Credit Documents or the Prepetition RBL Liens, (ii) any and all claims and causes of action arising under the Bankruptcy Code with respect to or relating to the Prepetition Credit Documents, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the Prepetition RBL Liens;

(g) (i) as of the Petition Date, the Borrower and certain affiliated guarantors (in such capacity, the "**Senior Notes Guarantors**") under that certain Indenture, dated as of February 16, 2017 (as amended, modified, or otherwise supplemented from time to time, the "**Senior Notes Indenture**") and the related 6.75% Senior Notes due 2025 (the "**Notes**"), by and among, *inter alia*, the Borrower, the lenders party thereto (the "**Senior Noteholders**") and U.S. Bank National Association, as indenture trustee (in such capacity, the "**Indenture Trustee**" and, together with the Senior Noteholders, the "**Senior Notes Parties**") were justly and lawfully indebted and liable to the Senior Notes Parties, without defense, counterclaim or offset of any kind, with respect to $625,005,000 in principal amount of Notes, plus unpaid interest, fees, any make whole premium, and other expenses and amounts arising and payable (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Senior Notes Indenture), charges, indemnities and other obligations incurred in connection therewith as provided in the Senior Notes Indenture (collectively, the "**Senior Notes Obligations**"), which Senior Notes Obligations have been guaranteed on a joint and several basis by the Senior Notes Guarantors, (ii) the Senior Notes Obligations constitute the legal, valid and binding obligations of the Borrower and the Senior Notes Guarantors, enforceable in accordance with the terms of the Senior Notes Indenture and the Notes (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Senior Notes Obligations or any payments made to the Senior Notes Parties or applied to, or paid on account of, the obligations owing under the Senior Notes Indenture prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset,

subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(h) by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Senior Notes Obligations, none of the Senior Notes Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors;

(i) no claims or causes of action exist against, or with respect to, the Senior Notes Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date; and

(j) subject to paragraph 22 below, the Debtors absolutely and unconditionally (i) release and forever discharge and acquit the Senior Notes Parties and their respective Representatives (collectively, the "**Senior Notes Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case, arising on or prior to the date of this Final Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to Senior Notes Indenture, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the Senior Notes Indenture or the Senior Notes Obligations, (ii)

any and all claims and causes of action arising under the Bankruptcy Code with respect to or relating to the Senior Notes Indenture, and (iii) any and all claims and causes of action regarding the validity, priority, or avoidability of the Senior Notes Obligations.

6.     Effective as of the date of entry of this Final Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Junior DIP Secured Parties and their respective Representatives (as defined below) (collectively, the "**Junior DIP Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type (in each case, arising on or prior to the date of this Final Order), whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, in each case, arising in connection with or relating to the Junior DIP Facility or any of the Junior DIP Documents; *provided*, *however*, that nothing herein shall relieve the Junior DIP Released Parties from fulfilling their obligations under the Junior DIP Documents and this Final Order.

7.     The liens granted to the Junior DIP Agent on behalf of the Junior DIP Secured Parties pursuant to the Interim Order and this Final Order are perfected, valid, enforceable and non-avoidable liens against the Debtors.

8.     *Findings Regarding the Junior DIP Financing and Cash Collateral.*

         (a) Good and sufficient cause has been shown for the entry of this Final Order.

(b) Since the Petition Date, the Loan Parties have had and will continue to have an immediate need to continue to use the Prepetition Collateral (including the Cash Collateral) to preserve their estates, including (i) to consummate the *Joint Prepackaged Chapter 11 Plan of Halcón Corporation and its Affiliated Debtors* [Docket No. 20] (the "**Proposed Plan**"), (ii) for the orderly continuation of the operation of their businesses, (iii) to preserve business relationships with vendors, suppliers, employees, and customers, and (iv) to satisfy other working capital and operational needs.  The Loan Parties also have a need for the financing available under the Junior DIP Facility because the Prepetition Collateral (including Cash Collateral) is insufficient to meet their capital and liquidity needs.  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new indebtedness under the Junior DIP Documents and other financial accommodations provided under the Junior DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c) The Loan Parties were unable to obtain financing on more favorable terms from sources other than the Junior DIP Lenders under the Junior DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Loan Parties were also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the Junior DIP Agent and the Junior DIP Lenders, subject to the Carve-Out, the Junior DIP Liens and the Junior DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Liens and Claims granted to the

Prepetition RBL Secured Parties, in each case, under the terms and conditions set forth in this Final Order and in the Junior DIP Documents.

(d) As a condition to entry into the Junior DIP Credit Agreement, the extension of credit under the Junior DIP Facility and the authorization to use Cash Collateral, the Junior DIP Agent, the Junior DIP Lenders, and the Prepetition RBL Secured Parties required and continue to require, and the Debtors have agreed, that proceeds of the Junior DIP Facility as well as Cash Collateral be used, in each case, in a manner consistent with the terms and conditions of the Interim Order and this Final Order, as applicable, the Junior DIP Documents and in accordance with the "**Budget**" (as initially attached to the Motion at **Exhibit C**, and as further updated from time to time in accordance with the terms of the Junior DIP Documents).

(e) The Junior DIP Lenders are willing to provide financing to the Debtors subject to:  (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the Junior DIP Facility and the Junior DIP Documents; (c) satisfaction of the closing conditions set forth in the Junior DIP Documents; and (d) findings by this Court that the Junior DIP Facility is essential to the Debtors' estates, that the Junior DIP Agent and Junior DIP Lenders are extending credit to the Debtors pursuant to the Junior DIP Documents in good faith, and that the Junior DIP Agent's and Junior DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order, and the Junior DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(f)  Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim and Final Hearings, the terms of the Junior DIP Financing, the terms of the Adequate Protection Liens and Claims granted to the Prepetition

RBL Secured Parties, and the terms on which the Loan Parties have used and may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to the Interim Order, this Final Order, and the Junior DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.  The terms and conditions of the Junior DIP Facility and Junior DIP Documents, and the fees paid and to be paid thereunder, are fair and reasonable, are ordinary and appropriate for secured financings of this type, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The terms and conditions of the Junior DIP Facility and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors, the Junior DIP Agent, the Junior DIP Lenders, and the Prepetition RBL Secured Parties, with the assistance of their respective counsel and other advisors.  Use of Cash Collateral and credit that was and is to be extended under the Junior DIP Facility are deemed to have been allowed, advanced, made, or extended in good faith by the Junior DIP Agent, the Junior DIP Lenders, and the Prepetition RBL Secured Parties, as applicable, within the meaning of section 364(e) of the Bankruptcy Code.

(g) The Junior DIP Financing, as well as the terms of the Adequate Protection Liens and Claims, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the Junior DIP Agent and the Junior DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the Junior DIP Financing and the Junior DIP Documents, including, without limitation:  (i) all loans made to and guarantees issued by the Loan Parties pursuant to the Junior DIP Documents (collectively, the "**Junior DIP Loans**") and (ii) any "**Secured Obligations**" (as defined in the Junior DIP Credit Agreement) of the

Loan Parties owing to the Junior DIP Agent, any Junior DIP Lender or any other Junior DIP Secured Party, in accordance with the terms of the Junior DIP Documents, including any obligations, to the extent provided for in the Junior DIP Documents, to indemnify the Junior DIP Agent or the Junior DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Junior DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under the Interim Order, this Final Order or the Junior DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**Junior DIP Obligations**"), are deemed to have been extended by the Junior DIP Agent and the Junior DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Junior DIP Agent and the Junior DIP Lenders (and the successors and assigns thereof) are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition RBL Secured Parties have acted in good faith regarding the Junior DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Claims and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition RBL Secured Parties (and the successors and assigns thereof) are entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

(h) The Prepetition RBL Secured Parties are entitled to the Adequate Protection Liens and Claims as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim and Final Hearings, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in the Interim Order, this Final Order or the other Junior DIP Documents, but subject to the terms and conditions of the RSA, shall (x) be construed as the affirmative consent by any of the Prepetition RBL Secured Parties for the use of Cash Collateral, other than on the terms set forth in the Interim Order and this Final Order, as applicable, and in the context of the Junior DIP Financing authorized by the Interim Order and this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) (except for the Junior DIP Financing, the Junior DIP Liens, and the Adequate Protection Liens and Claims) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition RBL Secured Parties, upon a change in circumstances, to seek new, different or additional adequate protection.

(i)  The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  For the reasons set forth in the Motion and declarations filed in connection therewith, absent granting the final relief set forth in this Final Order, the Loan Parties' estates would face (i) significant business disruptions from the loss of access to Cash Collateral, (ii) exposure to significant liquidity uncertainty in the current commodities market, and (iii) loss of confidence regarding financial

wherewithal by stakeholders, all of which would lead to immediate and irreparable harm. Consummation of the Junior DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with the Interim Order, this Final Order, and the Junior DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

9.     *Authorization of the Junior DIP Financing and the Junior DIP Documents.*

(a) The Loan Parties are hereby authorized, on a final basis, to execute, enter into and perform all obligations under the Junior DIP Documents.  The Borrower is hereby authorized on a final basis to forthwith borrow money pursuant to the Junior DIP Credit Agreement in an amount not to exceed $35 million, and the Guarantors are hereby authorized, on a final basis, to guaranty the Junior DIP Obligations, including, without limitation, the Borrower's obligations with respect to such borrowings (plus interest, fees, prepayment premiums, expenses (including professional fees and expenses) and other amounts (including, without limitation, obligations in respect of swap agreements with Secured Swap Providers (as defined in the Junior DIP Credit Agreement) entered into on a post-petition basis), in each case, as provided for in the Junior DIP Documents), subject to any limitations on borrowing under the Junior DIP Documents or this Final Order, which shall be used for all purposes permitted under the Junior DIP Documents (and subject to the terms and conditions set forth herein and therein), and for other general corporate purposes and working capital purposes, including to (i) pay required debt service on the Junior DIP Loans, (ii) pay the fees, costs and expenses of the Junior DIP Agent and the Junior DIP Lenders, (iii) pay fees and expenses of professionals associated with these Chapter 11 Cases, (iv) pay other costs and expenses associated with administration of the Chapter 11 Cases or permitted by the "first day" or

"second day" orders, (v) provide adequate protection as provided in paragraph 18 of this Final Order, and (vi) provide cash collateral to secure the issuance by third-party providers of letters of credit.

(b) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed, on a final basis, to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and, subject to the requirements of paragraph 9(b)(iii), to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the Junior DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the Junior DIP Documents, upon which execution and delivery, the Junior DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms;

(ii)      the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the Junior DIP Documents, in each case, in such form as the Loan Parties, the Junior DIP Agent and the Majority Lenders (as defined in the Junior DIP Credit Agreement) may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the Junior DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of

the extensions of credit thereunder or increase the aggregate commitments or the rate of interest or fees payable thereunder;

(iii)     the non-refundable payment to the Junior DIP Agent or the Junior DIP Lenders, as the case may be, of all fees including, without limitation, any closing fee, upfront fee, commitment fee, administrative fee or agency fee (which fees shall be deemed to have been approved upon entry of the Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), and any amounts due (or that may become due) in respect of the indemnification obligations, in each case under the Junior DIP Credit Agreement or any other Junior DIP Documents and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the Junior DIP Agent or Junior DIP Lenders (including, without limitation, the fees and expenses of Ballard Spahr LLP, as primary counsel to the Junior DIP Agent, Paul, Weiss, Rifkind, Wharton & Garrison LLP, as primary counsel to the Junior DIP Lenders, a single local counsel to the Junior DIP Agent and Junior DIP Lenders in the State of Texas and Ducera Partners, LLC, as financial advisor to the Junior DIP Lenders), in each case, as provided for in the Junior DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party other than as required herein; *provided*, *however*, any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices to the U.S. Trustee and counsel for any official committee (if appointed) contemporaneously with the delivery of such invoices to the Debtors; and

(iv)    the performance of all other acts required under or in connection with the Junior DIP Documents, including the granting of the Junior DIP Liens and Junior DIP Superpriority Claims and perfection of the Junior DIP Liens and the Junior DIP Superpriority Claims as provided in the Interim Order and herein.

(c) The Junior DIP Documents constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the Junior DIP Documents, the Interim Order, and this Final Order.  No obligation, payment, transfer, or grant of collateral security hereunder with respect to the Junior DIP Facility or under the Junior DIP Documents (including any Junior DIP Obligation or Junior DIP Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 545 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(d) The Junior DIP Documents, the Interim Order, and this Final Order constitute and evidence the validity and binding effect of the Debtors' Junior DIP Obligations, which are enforceable against the Debtors, their estates and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases.  The Debtors are jointly and severally liable for the Junior DIP Obligations.  The Junior DIP Obligations shall be due and

payable, without notice or demand, and the use of Cash Collateral shall automatically cease, on the Termination Date (as defined in the Junior DIP Credit Agreement), except as provided in paragraph 12 herein.

10.     *Junior DIP Superpriority Claims.*

(a)  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Junior DIP Obligations constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**Junior DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Junior DIP Superpriority Claims shall be payable from, and have recourse to, all pre- and postpetition property of the Loan Parties and all proceeds thereof (including any proceeds or property recovered, unencumbered or otherwise, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**"), of the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**")); *provided* that the Junior DIP Superpriority Claims shall be subordinated and subject only to (i) payment of the Carve-Out, (ii) the Adequate Protection Claims, and (iii) the claims of the Prepetition RBL Secured Parties under or in connection with the Prepetition

Credit Documents, including amounts owing under any Prepetition Secured Swap Agreements (collectively, the "**Prepetition RBL Claims**").  The Junior DIP Superpriority Claims are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b) For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000; and (iii) (A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors or any official committee pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code, as applicable (collectively, the "**Professional Fees**"), incurred at any time on or prior to the Trigger Notice, plus (B) Professional Fees incurred after the Trigger Notice in an amount not to exceed $2,000,000; *provided,* that under no circumstances shall any success, completion, or similar fees be payable from the Carve-Out following delivery of a Trigger Notice (the "**Carve-Out Cap**"), in each case subject to the limits imposed by the Interim Order, this Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition RBL Secured Party; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds.  "**Trigger Notice**" shall mean a written notice delivered by the

Junior DIP Agent to lead counsel for the Debtors, Simpson Thacher & Bartlett LLP, as lead counsel for the Prepetition RBL Agent, the office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), and any official committee describing the Event of Default (as defined in the Junior DIP Credit Agreement) that is alleged to continue under the Junior DIP Documents.  Immediately upon delivery of a Trigger Notice, and prior to the payment to any Prepetition RBL Secured Party on account of the Adequate Protection Claims, the Prepetition RBL Claims or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the Junior DIP Agent or the Prepetition RBL Agent (the "**Carve-Out Account**"), an amount equal to the Carve-Out Cap.  The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the Junior DIP Agent and the Prepetition RBL Agent, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors so as to allow for the funding of the Carve-Out Account and (ii) shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out.

(c)  Any funding of the Carve-Out by the Junior DIP Lenders shall be added to, and made a part of, the Junior DIP Obligations and secured by the Junior DIP Collateral and otherwise entitled to the protections granted under the Interim Order, this Final Order, the Junior DIP Documents, the Bankruptcy Code and applicable law.

(d)  Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the Junior DIP

Lenders, the Junior DIP Agent, the Prepetition RBL Lenders or the Prepetition RBL Agent, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Junior DIP Documents or the Prepetition Credit Documents (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to sections 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the Junior DIP Secured Parties or the Prepetition RBL Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the Junior DIP Lenders' or the Junior DIP Agent's assertion, enforcement or realization upon any Junior DIP Collateral or Prepetition Collateral in accordance with the Junior DIP Documents and this Final Order other than to seek a determination that an Event of Default (as defined in the Junior DIP Credit Agreement) has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of these Chapter 11 Cases unless such payments are approved by an order of the Court, and (y) prior to the delivery of the Trigger Notice, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.  Further, notwithstanding anything to the contrary in the Interim Order or this Final Order, the failure of the Carve-Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out.

11.    *Junior DIP Liens*.  As security for the Junior DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge

agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the Junior DIP Agent of, or over, any Junior DIP Collateral, the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens were and are hereby granted to the Junior DIP Agent for its own benefit and the benefit of the Junior DIP Secured Parties (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "**Junior DIP Collateral"**), in each case subject to the payment of the Carve-Out (all such liens and security interests granted to the Junior DIP Agent, for its benefit and for the benefit of the Junior DIP Secured Parties, pursuant to the Interim Order, this Final Order, and the Junior DIP Documents, the "**Junior DIP Liens**"):

(a)   First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to either (x) valid, perfected and non-avoidable liens as of the Petition Date, or (y) valid and non-avoidable liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (collectively, "**Unencumbered Property**"), including the Avoidance Proceeds, subject and subordinate to the Adequate Protection Liens (as defined below) (the "**Junior DIP Unencumbered Property Liens**");

(b)   Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party

other than the property described in clause (a) of this paragraph 11, that is subject to (x) valid, perfected and non-avoidable liens in existence at the time of the commencement of these Chapter 11 Cases, (y) valid and non-avoidable liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (such liens described in clauses (x) and (y) are referred to herein as the "**Other Existing Liens**"), or (z) the Prepetition RBL Liens, which security interest and lien:  (i) are junior and subordinate to (1) the Adequate Protection Liens, (2) the Prepetition RBL Liens (including valid and perfected liens in favor of any Secured Swap Provider (as defined in the Prepetition RBL Credit Agreement) in connection with any Secured Swap Agreement (as defined in the Prepetition RBL Credit Agreement) entered into by the Debtors prior to the Petition Date, regardless of whether such Secured Swap Agreement is terminated, or remains in effect after, the Petition Date (collectively, the "**Prepetition Secured Swap Agreements**") in accordance with the *Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 553 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Performing Under Their Prepetition Hedging Agreements and (B) Enter Into and Perform Under New Postpetition Hedging Agreements and (II) Modifying Automatic Stay* filed contemporaneously with the Motion [Docket No. 83] (the "**Hedging Motion**"), including any Novated Hedging Agreements (as defined in the Hedging Motion), and (3) any Other Existing Liens to the extent such Other Existing Liens are senior in priority to the Prepetition RBL Liens (the "**Other Senior Liens**"); and (ii) rank *pari passu* with any valid and non-avoidable liens in favor of any Secured Swap Provider in connection with any Secured Swap Agreement entered into by the Debtors after the Petition Date in accordance with the Hedging Motion and permitted under the Junior DIP Documents (the "**Postpetition**

Secured Swap Liens"); *provided*, that such Postpetition Secured Swap Liens shall be senior in priority of payment to any liens in accordance with the Junior DIP Documents; and

(c) <u>Liens Senior to Certain Other Liens</u>.   The Junior DIP Liens are not (i) subject or subordinate to or made *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code granted after the date hereof (other than the Adequate Protection Liens).

12.      *Rights and Remedies Upon Event of Default.*   Notwithstanding the automatic stay provisions of section 362 of the Bankruptcy Code, the Junior DIP Agent, acting at the direction of the Majority Lenders (as defined in the Junior DIP Credit Agreement) may immediately upon the occurrence of an Event of Default, declare (any such declaration shall be referred  to  herein  as  a "**Termination  Declaration**" and the date which is the earliest to occur of (a) any date on which a Termination Declaration is delivered and (b) the Termination Date, as defined in the Junior DIP Credit Agreement, shall be referred to herein as the "**Termination Declaration Date**") (A) the termination, reduction or restriction of the Junior DIP Facility and any further Commitments (as defined in the Junior DIP Credit Agreement) (collectively, the "**Junior DIP Commitments**") to the extent any such Junior DIP Commitments remain, but without affecting any of the Junior DIP Liens or the Junior DIP Obligations and (B) that the application of the Carve-Out has occurred through the delivery of the Trigger Notice to the Debtors as provided herein.  The Termination Declaration and the Trigger Notice shall be given by electronic mail (or other electronic means) to lead counsel to the Debtors, Simpson Thacher & Bartlett LLP, as lead counsel for the Prepetition RBL Agent, counsel to each official committee (if any), and the U.S. Trustee.   Upon the

28

Termination Declaration Date, the Junior DIP Agent may file a motion on shortened, but not less than 5 days' notice, seeking relief from the automatic stay (the "**Stay Relief Motion**") in order to (a) accelerate the Junior DIP Obligations to be immediately due and payable and (b) permit the Junior DIP Agent to exercise all other rights and remedies provided for in the Junior DIP Documents and under applicable law.  At the hearing on the Stay Relief Motion, the Debtors may seek to stay the Junior DIP Agent's exercise of any rights and remedies (including seeking to use Cash Collateral on a non-consensual basis); *provided* that the sole issues that the Debtors or any other party in interest may bring before the Court at any such emergency hearing are (a) whether an Event of Default or other breach of the Interim Order or this Final Order has occurred and/or is continuing and (b) whether the Debtors shall have the ability to use Cash Collateral on a non-consensual basis.  Following entry of an order by the Court granting the Stay Relief Motion, (A) the Junior DIP Agent on behalf of the Junior DIP Secured Parties may exercise its rights and remedies, in accordance with the Junior DIP Documents and this Final Order, to satisfy the Junior DIP Obligations, the Junior DIP Superpriority Claim and the Junior DIP Liens, subject to the Carve-Out and the Prepetition RBL Claims and the Adequate Protection Claims, and (B) the Prepetition RBL Secured Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition Credit Documents and this Final Order, to satisfy the Prepetition RBL Claims and the Adequate Prepetition Liens and Claims, subject to the Carve-Out.

13.     *Marshaling, Equities of the Case Exception.*  In no event shall the Junior DIP Agent, the other Junior DIP Secured Parties or the Prepetition RBL Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Junior DIP Collateral. In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition RBL Secured Parties.

14.     *Limitation on Charging Expenses Against the Collateral.*  Except to the extent of the Carve-Out, no costs or expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Junior DIP Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Junior DIP Agent or the Prepetition RBL Agent, acting at the written direction of the requisite percentage of Prepetition RBL Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the Junior DIP Agent, the Junior DIP Lenders, the Prepetition RBL Agent, or the Prepetition RBL Lenders and nothing contained in this Final Order shall be deemed to be a consent by the Junior DIP Agent, the Junior DIP Lenders or the Prepetition RBL Secured Parties to any charge, lien, assessment or claim against the Junior DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

15.     *Payments Free and Clear.*  Subject only to the Carve-Out, any and all payments or proceeds remitted to the Junior DIP Agent on behalf of the Junior DIP Lenders or the Prepetition RBL Agent on behalf of the Prepetition RBL Secured Parties pursuant to the provisions of the Interim Order, this Final Order or the Junior DIP Documents shall be received free and clear of any claim, charge, assessment or other liability.

16.     *No Obligation to Extend Credit.*  The Junior DIP Agent and Junior DIP Lenders shall have no obligation to make any loan or advance under the Junior DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the Junior DIP Documents have been satisfied in full or waived by the Junior DIP Agent or the Junior DIP Lenders, as applicable, in accordance with the terms of the Junior DIP Documents.

17.      *Use of Cash Collateral; Budget*.  The Loan Parties were pursuant to the Interim Order and are hereby authorized on a final basis, subject to the terms and conditions of this Final Order, to use Cash Collateral in accordance with the terms hereof and thereof; *provided* that (a) the Prepetition RBL Secured Parties have been granted the Adequate Protection Liens and Claims pursuant to the Interim Order and will continue to be granted the Adequate Protection Liens and Claims hereby, and (b) except on the terms and conditions of this Final Order, the Loan Parties shall be enjoined and prohibited from using the Cash Collateral absent further order of the Court. The Debtors shall comply with the Budget as and when required under the Junior DIP Credit Agreement (subject to the variances and exclusions set forth therein). The Debtors shall provide all reports and other information as required in the Junior DIP Credit Agreement (subject to the grace periods provided therein) to the Prepetition RBL Agent.

18.      *Adequate Protection of Prepetition RBL Secured Parties*.  The Prepetition RBL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition RBL Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Adequate Protection Claims**").  In consideration of the foregoing, the Prepetition RBL Secured Parties were granted pursuant to the Interim Order and are hereby granted on a final basis the following:

(a) <u>Prepetition RBL Secured Parties Adequate Protection Liens</u>.   The Prepetition RBL Agent (for itself and for the benefit of the other Prepetition RBL Secured Parties) is granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the aggregate amount of the Adequate Protection Claims, valid, perfected replacement security interests in and liens upon all of the Junior DIP Collateral including, without limitation, Unencumbered Property and the Avoidance Proceeds, in each case subject and subordinate only to the Carve-Out and the Other Senior Liens, (the "**Adequate Protection Liens**" and, together with the Adequate Protection Claims, the "**Adequate Protection Liens and Claims**");

(b) <u>Prepetition RBL Secured Parties 507(b) Claim</u>.  The Prepetition RBL Agent (for itself and for the benefit of the other Prepetition RBL Secured Parties) is granted, subject to the Carve-Out, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code in the aggregate amount of the applicable Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition RBL Secured Parties 507(b) Claims**"); which Prepetition RBL Secured Parties 507(b) Claims have recourse to and are payable from all of the Junior DIP Collateral including without limitation the Avoidance Proceeds.   The Prepetition RBL Secured Parties 507(b) Claims are subject and subordinate only to the Carve-Out and any Other Senior Liens (to the extent permitted by the Prepetition Credit Documents).

(c) <u>Prepetition RBL Secured Parties Cash Payments</u>.  Pursuant to the Interim Order, the Debtors paid in cash to the Prepetition RBL Agent, on behalf of the Prepetition RBL

Secured Parties, all accrued and outstanding interest and fees (including any agency and letter of credit fees), at the default rate, as of the Petition Date.  On the first business day of each month following the Petition Date, beginning with September 3, 2019, the Debtors shall pay in cash to the Prepetition RBL Agent, on behalf of the Prepetition RBL Secured Parties, all accrued and outstanding  interest and fees (including any agency and letter of credit fees) at the default rate; *provided*, that if the letters of credit issued pursuant to the Prepetition RBL Credit Agreement are drawn during the pendency of these Chapter 11 Cases, then amounts funded by the Prepetition RBL Secured Parties shall bear interest at the default contract rate for purposes of the cash payments under this paragraph 18(c); *provided, further,* that the payments made under this paragraph 18(c) shall be without prejudice to the right of any party as to whether such payments constitute postpetition interest allowable under section 506(b) of the Bankruptcy Code or are in respect of principal.

(d) <u>Information Rights</u>.  The Debtors shall promptly provide the Prepetition RBL Agent, on behalf of itself and the Prepetition RBL Secured Parties, with all required written financial reporting and other periodic reporting that is delivered by the Loan Parties under the Junior DIP Credit Agreement, including the Budget as and when delivered to the Junior DIP Agent.

(e) <u>Prepetition RBL Secured Parties Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the Junior DIP Documents, (i) upon entry of the Interim Order, the Loan Parties paid in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable for Simpson Thacher & Bartlett LLP, as lead counsel for the Prepetition RBL Agent, and RPA Advisors, LLC, as financial advisor for the Prepetition RBL Agent, that accrued prior to the Petition Date in accordance with the

Prepetition RBL Credit Agreement, and (ii) the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements when due for Simpson Thacher & Bartlett LLP, as lead counsel for the Prepetition RBL Agent, and RPA Advisors, LLC, as financial advisor for the Prepetition RBL Agent, that have accrued on or after the Petition Date.

(f) <u>Payment of Fees and Expenses</u>.   The payment of the fees, expenses and disbursements set forth in paragraph 18(e) herein (to the extent incurred after the Petition Date) shall be made within 10 days (which time period may be extended by the applicable professional) after the receipt by the Debtors, counsel of any statutory committee and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date; *provided*, *however*, the requirement to submit invoices to any statutory committee and U.S. Trustee for professional fees, expenses, and disbursements shall not apply to any professional fees or expenses required to have been paid on the date of entry of the Interim Order or the Closing Date.   The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice:  (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional).  The Debtors, any statutory committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed**

**Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least 10 days' prior written notice to the Prepetition RBL Agent and the Prepetition RBL Lenders of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

19.     *Reservation of Rights of Prepetition RBL Secured Parties.*  Under the circumstances and given that the Adequate Protection Liens and Claims are consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection Liens and Claims are reasonable and sufficient to protect the interests of the Prepetition RBL Secured Parties; *provided* that the Prepetition RBL Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may, contest any such request.

20.     *Perfection of Junior DIP Liens and Adequate Protection Liens.*

(a) The Interim Order and this Final Order are sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted therein and herein, including the Junior DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-

35

bankruptcy law) the Junior DIP Liens, the Adequate Protection Liens, or to entitle the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties to the priorities granted herein.

(b) Notwithstanding the foregoing, the Junior DIP Agent and the Prepetition RBL Agent are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities (to the extent not already in possession of a Prepetition RBL Secured Party), or take any other action in order to validate and perfect the liens and security interests granted to them hereunder or under the Junior DIP Documents.  Whether or not the Junior DIP Agent, on behalf of the Junior DIP Secured Parties, or the Prepetition RBL Agent shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them under the Interim Order or hereunder, such liens and security interests are deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of the Interim Order.  Upon the request of the Junior DIP Agent, each of the Prepetition RBL Secured Parties and the Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Junior DIP Agent to further validate, perfect, preserve and enforce the Junior DIP Liens, and the Loan Parties shall provide reasonable cooperation to the Junior DIP Agent with respect to

such matters.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c) A certified copy of the Interim Order or this Final Order may, in the discretion of the Junior DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order or this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Junior DIP Agent to take all actions, as applicable, referenced in this subparagraph (c) and the immediately preceding subparagraph (b).

21.    *Preservation of Rights Granted Under This Final Order.*

(a) Other than the Carve-Out and other claims and liens expressly granted by the Interim Order and/or this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the Junior DIP Agent and the Junior DIP Secured Parties or the Prepetition RBL Secured Parties shall be permitted while any of the Junior DIP Obligations or the Adequate Protection Liens and Claims remain outstanding, and, except as otherwise expressly provided in paragraphs 11 or 18(a) of this Final Order, the Junior DIP Liens and the Adequate Protection Liens are not:  (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Majority Lenders seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

    (i)    a failure of the Debtors to make any payment under this Final Order to any of the Prepetition RBL Secured Parties and the Junior DIP Secured Parties, as applicable, when due;

    (ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in the Interim Order or this Final Order or (y) comply with any covenant or agreement in the Interim Order or this Final Order in any material respect;

    (iii)    any modifications, amendments, or reversal of the Interim Order or this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

    (iv)    an order converting or dismissing any of these Chapter 11 Cases;

    (v)    an order appointing a chapter 11 trustee in these Chapter 11 Cases;

    (vi)    an order appointing an examiner (other than a fee examiner) with enlarged powers in these Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

    (vii)    the termination of the RSA;

    (viii)    a plan of reorganization, other than the Proposed Plan or another Acceptable Plan of Reorganization, being filed by the Debtors with the Court or the confirmation thereof;

    (ix)    the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the Junior DIP Documents), which does not provide for the repayment in full in cash of all Junior DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) and the novation or other satisfaction of hedge obligations; or

    (x)    any "Event of Default" as defined in the Junior DIP Credit Agreement.

(c) The Debtors shall not seek, and it shall terminate the right of the Loan Parties to use Cash Collateral (subject to the notice and remedial provisions in paragraph 12 hereof) if any of the Loan Parties, without the prior written consent of the Prepetition RBL Agent, seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

    (i)    a failure of the Debtors to make any payment under this Final Order to any of the Prepetition RBL Secured Parties when due;

    (ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in the Interim Order or this Final Order or (y) comply with any covenant or agreement in the Interim Order or this Final Order in any material respect, and such failure is materially adverse to the Prepetition RBL Secured Parties;

    (iii)    any modifications, amendments, or reversal of the Interim Order or this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party, and such modification, amendment, or extension is adverse to the Prepetition RBL Secured Parties;

    (iv)    an order converting or dismissing any of these Chapter 11 Cases;

    (v)    an order appointing a chapter 11 trustee in these Chapter 11 Cases;

    (vi)    an order appointing an examiner with enlarged powers in these Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), and such order is materially adverse to the Prepetition RBL Secured Parties;

    (vii)    the sale of all or substantially all of the assets of the Loan Parties or a plan of reorganization (other than the Proposed Plan), without the consent of the Prepetition RBL Agent, which does not provide for the repayment in full in cash of all obligations to the Prepetition RBL Secured Parties and cash collateralization of outstanding letters of credit (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) on the closing date or effective date thereof, as applicable; or

(viii)   there occurs an Event of Default under and as defined in the Junior DIP Credit Agreement that has not been waived within five business days of the occurrence thereof.

Notwithstanding any order that may be entered dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i) the Junior DIP Superpriority Claims, the Junior DIP Liens, and the Adequate Protection Liens and Claims shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Junior DIP Obligations and Adequate Protection Claims shall have been indefeasibly paid in full in cash or otherwise satisfied in full (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) (and that such Junior DIP Superpriority Claims, Junior DIP Liens, and Adequate Protection Liens and Claims shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by the Interim Order or this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in the Interim Order or this Final Order.

(d) Until the Junior DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, or otherwise satisfied in full, the Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) shall (i) maintain books, records, and accounts to the extent and as required by the Junior DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Agent all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by such parties) to provide under the Junior DIP Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit the Junior DIP

Agent, the Junior DIP Lenders and the Prepetition RBL Agent, and their respective advisors to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors as and to the extent required by the Junior DIP Documents and/or the Prepetition Credit Documents; (iv) permit the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties, and their respective advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets; and (v) upon reasonable advance notice, permit the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Agent to conduct, at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the Junior DIP Collateral and the Prepetition Collateral in accordance with the Junior DIP Documents and the Prepetition Credit Documents.

(e) If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect:  (i) the validity, priority or enforceability of any Junior DIP Obligations or Adequate Protection Liens and Claims incurred prior to the actual receipt of written notice by the Junior DIP Agent or the Prepetition RBL Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the Junior DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any Junior DIP Obligations, Junior

DIP Liens, or Adequate Protection Liens incurred by the Loan Parties to the Junior DIP Agent, the Junior DIP Secured Parties or the Prepetition RBL Secured Parties, as the case may be, prior to the actual receipt of written notice by the Junior DIP Agent or the RBL Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of the Interim Order or this Final Order, as applicable, and the Junior DIP Agent, the Junior DIP Secured Parties and the Prepetition RBL Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order and the Junior DIP Documents with respect to all uses of Cash Collateral, Junior DIP Obligations and the Adequate Protection Liens and Claims.

(f) Except as expressly provided in this Final Order or in the Junior DIP Documents, the Junior DIP Liens, the Junior DIP Superpriority Claims, the Adequate Protection Liens and Claims, and all other rights and remedies of the Junior DIP Agent, the Junior DIP Secured Parties and the Prepetition RBL Secured Parties granted by the provisions of the Interim Order, this Final Order and the Junior DIP Documents shall survive, and shall not be modified, impaired or discharged by:  (i) the entry of an order converting any of these Chapter 11 Cases to a case under chapter 7, dismissing any of these Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Junior DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except, as to the Junior DIP Liens, the Junior DIP Superpriority Claims, and all other rights and remedies of the Junior DIP Agent and the Junior DIP Secured Parties, to the extent permitted by the Junior DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of these Chapter 11 Cases and, pursuant to

42

section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining Junior DIP Obligations or Adequate Protection Liens and Claims.  The terms and provisions of this Final Order and the Junior DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Junior DIP Liens, the Junior DIP Superpriority Claims, the Adequate Protection Liens and Claims and all other rights and remedies of the Junior DIP Agent, the Junior DIP Secured Parties and the Prepetition RBL Secured Parties granted by the provisions of the Interim Order, this Final Order and the Junior DIP Documents shall continue in full force and effect until the Junior DIP Obligations and the Prepetition RBL Claims are indefeasibly paid in full in cash or otherwise satisfied in full, with the consent of any applicable holders of such claims, as set forth herein and in the Junior DIP Documents and the Prepetition Credit Documents, and the Junior DIP Commitments have been terminated.

22.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 5 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in paragraph 5 of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:

(a) such committee or any other party in interest, in each case obtains the requisite standing to file (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), and timely files an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 22) by no later than (i) the earlier of an order confirming a chapter 11 plan and 70 calendar days after entry of the Interim Order; (ii) any such later date as has been agreed to, in writing, by the Prepetition RBL Agent or the Indenture Trustee acting at the direction of the Requisite Creditors (as defined in the RSA), as applicable; and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph 22 (the time period established by the foregoing clauses (i)-(iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition RBL Debt, the Prepetition RBL Liens, or Senior Notes Obligations, as applicable, (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition RBL Secured Parties, the Senior Notes Parties, or their respective subsidiaries and each of their former, current or future officers, partners, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Documents, the Prepetition RBL Debt, the Prepetition RBL Liens, the Prepetition Collateral, the Senior Notes Indenture, or the Senior Notes Obligations, as applicable; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge

in any such timely-filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then:  (a) the Debtors' stipulations, admissions, agreements and releases contained in paragraph 5 of this Final Order shall be binding on all parties in interest; (b) (1) the obligations of the Loan Parties under the Prepetition Credit Documents, including the Prepetition RBL Debt, and (2) the obligations of the Borrower and Senior Notes Guarantors under the Senior Notes Indenture, including the Senior Notes Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition RBL Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition RBL Debt, the Prepetition RBL Liens on the Prepetition Collateral, and the Senior Notes Obligations shall not be subject to any other or further claim or challenge by any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), and any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any

successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition RBL Secured Parties or the Senior Notes Parties and their Representatives arising out of or relating to the Prepetition Credit Documents or the Senior Notes Indenture, as applicable, shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in paragraph 5 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph 22) on any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition RBL Debt, the Prepetition RBL Liens, the Senior Notes Indenture, or the Senior Notes Obligations.

23.     *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

24.     *Amendment of the Junior DIP Documents*.  The Junior DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order

46

of the Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the Debtors as described above, and (b) in accordance with the Junior DIP Documents.  In the case of a material amendment, modification, or supplement to the Junior DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which shall be provided through electronic mail) to Simpson Thacher & Bartlett LLP, as lead counsel for the Prepetition RBL Agent, Stroock & Stroock & Lavan LLP, counsel to Secured Swap Provider, J. Aron & Company, counsel to any official committee (if appointed) and the U.S. Trustee (collectively, the "**Notice Parties**"), each of whom shall have five business days from the date of such notice to object in writing to such amendment, modification or supplement.  If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution.  If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; provided that such amendment, modification or supplement shall be without prejudice to the  right of any party in interest to be heard.  Any modification, amendment or supplement that becomes effective in accordance with this paragraph 24 shall be filed with the Court.

25.     *Proceeds of Subsequent Financing*.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any successor cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the Junior DIP Documents at any time prior to the indefeasible repayment or satisfaction in full of all Junior DIP Obligations and Prepetition RBL Claims (to the extent such remain outstanding), then the cash proceeds derived from such credit shall immediately

be turned over to the Junior DIP Agent or Prepetition RBL Agent, as applicable, to be applied in accordance with this Final Order, the Junior DIP Documents or the Prepetition Credit Documents, as applicable.

26. *Limitation on Use of Junior DIP Financing Proceeds and Collateral.* Notwithstanding any other provision of this Final Order or any other order entered by the Court, no Junior DIP Loans, Junior DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in these Chapter 11 Cases, or any trustee appointed in these Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the Junior DIP Agent, the Junior DIP Lenders, or the Prepetition RBL Secured Parties, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition RBL Debt, liens on the Prepetition Collateral, Junior DIP Obligations, Junior DIP Liens, Junior DIP Superpriority Claims, and/or the Adequate Protection Liens and Claims granted to the Prepetition RBL Secured Parties under the Interim Order or this Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition RBL Debt, the Junior DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the Junior DIP Documents or the Prepetition Credit Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) to prevent, hinder, or otherwise delay the Prepetition RBL Secured Parties', the Junior DIP Agent's or the

48

Junior DIP Lenders', as applicable, enforcement or realization on the Prepetition RBL Debt, Prepetition Collateral, Junior DIP Obligations, Junior DIP Collateral, and the liens, claims and rights granted to such parties under the Interim Order and/or this Final Order, each in accordance with the Junior DIP Documents, the Prepetition Credit Documents or this Final Order, as applicable; (iii) to seek to modify any of the rights and remedies granted to the Prepetition RBL Secured Parties, the Junior DIP Agent or the Junior DIP Secured Parties under the Interim Order, this Final Order, the Prepetition Credit Documents or the Junior DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the Junior DIP Documents or the Adequate Protection Liens) or security interests in the Junior DIP Collateral or any portion thereof that are senior to, or on parity with, the Junior DIP Liens, Junior DIP Superpriority Claims, Adequate Protection Liens and Claims granted to the Prepetition RBL Secured Parties, unless all Junior DIP Obligations, Prepetition RBL Debt, adequate protection, and claims granted to the Junior DIP Agent, Junior DIP Secured Parties or Prepetition RBL Secured Parties under the Interim Order or this Final Order have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the Junior DIP Lenders with respect to the Junior DIP Obligations or by the Prepetition RBL Agent with respect to the Prepetition RBL Debt; or (v) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Junior DIP Lenders or are otherwise included in the Budget.

27.     *DIP and Other Expenses*.  The Debtors are authorized and directed, on a final basis, to pay all prepetition and postpetition fees and out-of-pocket expenses of the Junior DIP Agent and the Junior DIP Lenders as provided in the Junior DIP Documents, whether or not the

transactions contemplated hereby are consummated, including attorneys' fees and financial advisory fees, and indemnification and reimbursement of fees and expense. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the Junior DIP Agent or the Junior DIP Lenders shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices  to the U.S. Trustee and counsel for any official committee (if appointed) contemporaneously with the delivery of such invoices to the Debtors.  Within 10 days of receiving any such invoices, the U.S. Trustee and any statutory committee may object to any portion of such fees by filing a motion or other pleading with the Court, on at least 10 days' prior written notice to the Junior DIP Agent and the Junior DIP Lenders of any hearing on such motion or other pleading, setting forth the specific objections to the disputed portion of such invoiced fees and expenses in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of such invoiced fees shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.    Notwithstanding the foregoing, the Debtors are authorized and directed, on a final basis, to pay all fees, costs, and out-of-pocket expenses of the Junior DIP Agent and the Junior DIP Lenders, as provided in the Junior DIP Documents, whether incurred on or prior to the Petition Date, without the need for any professional engaged by such parties to first deliver a copy of its invoice or other supporting documentation to the Notice Parties.  No attorney or advisor to the Junior DIP Agent or the Junior DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to or following the Petition Date by any of the Debtors to the Junior DIP

Agent, the Junior DIP Lenders, or their advisors in connection with or with respect to the Junior DIP Facility are hereby approved in full on a final basis and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

28.    *Disposition of DIP Collateral*.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Junior DIP Collateral or Prepetition Collateral other than in the ordinary course of business or as permitted under the Junior DIP Documents (as in effect on the date of this Final Order) without the prior written consent of the Junior DIP Agent and the Prepetition RBL Agent, and no such consent shall be implied, from any other action, inaction or acquiescence by the Junior DIP Agent, the Junior DIP Lenders, or the Prepetition RBL Secured Parties.  As between the RBL Debt and the Junior DIP Obligations, any proceeds upon the sale of Junior DIP Collateral or Prepetition Collateral shall be applied in accordance with the priorities set forth in this Final Order.

29.    *Loss or Damage to Collateral*.  Nothing in this Final Order, the Junior DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Junior DIP Agent, any Junior DIP Lender or any of the Prepetition RBL Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the Junior DIP Agent and the Junior DIP Lenders comply with their obligations under the Junior DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the Junior DIP Agent and the Junior DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Junior DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any

carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Junior DIP Collateral shall be borne by the Loan Parties.

30.  *Final Order Governs*.  In the event of any inconsistency between the provisions of this Final Order and the Junior DIP Documents or any other order entered by this Court, including the Interim Order, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the Junior DIP Documents, including, without limitation, the Budget.

31.  *Section 506(c) Claims*.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties, or any of their respective claims, the Junior DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties, as applicable. No such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

32.  *Section 552(b)*.  Each Prepetition RBL Secured Party is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition RBL Secured Parties, with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

33.  *Binding Effect; Successors and Assigns*.  Immediately upon the entry of this Final Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the Junior DIP Agent, the Junior DIP Lenders, the

Prepetition RBL Secured Parties, all other creditors of any of the Debtors, any official committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any successor cases, or upon dismissal of any Chapter 11 Case or successor case.  The Junior DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Junior DIP Agent, the Junior DIP Secured Parties, the Prepetition RBL Secured Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Junior DIP Agent, the Junior DIP Secured Parties, the Prepetition RBL Secured Parties and the Debtors and their respective successors and assigns; *provided* that the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

34.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the Junior DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the Junior DIP Documents, as applicable, the Junior DIP Agent and the Junior DIP Lenders shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the

Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

35.     *Master Proofs of Claim.*  The Prepetition RBL Agent and Senior Notes Trustee shall not be required to file proofs of claim in these Chapter 11 Cases or any successor case in order to assert claims on behalf of the Prepetition RBL Secured Parties with respect to the Prepetition RBL Debt arising under the Prepetition Credit Documents or on behalf of the Senior Notes Parties with respect to the Senior Notes Obligations and the Senior Notes Indenture, as applicable.  The statements of claim in respect of the Prepetition RBL Debt and Senior Notes Obligations, as applicable, set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim and Final Hearings, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, (i) the Prepetition RBL Agent is authorized to file in the Debtors' lead chapter 11 case *Halcón Resources Corporation,* Case No. 19-34446 (DRJ), a single, master proof of claim on behalf of the Prepetition RBL Secured Parties on account of their claims arising under the Prepetition Credit Documents and hereunder (the "**RBL Master Proof of Claim**"), and (ii) the Senior Notes Trustee is authorized to file in the Debtors' lead chapter 11 case *Halcón Resources Corporation,* Case No. 19-34446 (DRJ), a single, master proof of claim on behalf of the Senior Notes Parties on account of their claims arising under the Senior Notes Indenture and hereunder (the "**Senior Notes Master Proof of Claim**" and, together with the RBL Master Proof

54

of Claim, the "**Master Proofs of Claim**"), against each of the Debtors.  Upon the filing of the Master Proofs of Claim against each of the Debtors, each of the Prepetition RBL Agent and the Prepetition RBL Secured Parties, and the Senior Notes Trustee and the Senior Notes Parties, as applicable and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount described herein in respect of its respective claims against each of the Debtors of any type or nature whatsoever with respect to the Prepetition Credit Documents or the Senior Notes Indenture, as applicable, and the claim of each Prepetition RBL Secured Party or Senior Notes Party (and each of its respective successors and assigns), as applicable, named in the Master Proofs of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition RBL Secured Party or Senior Notes Party, as applicable, acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 35 and the Master Proofs of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition RBL Secured Party or Senior Notes Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the Prepetition RBL Secured Parties or Senior Notes Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition RBL Agent or Senior Notes Trustee, as applicable.

36.     *Insurance*.  To the fullest extent provided by applicable law, the Junior DIP Agent (on behalf of the Junior DIP Lenders) and the Prepetition RBL Agent (on behalf of the Prepetition RBL Lenders), were upon entry of the Interim Order, and shall continue to be, deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the Junior DIP Collateral.  To the extent that the Prepetition RBL Agent is listed as loss payee under the Borrower's or Guarantors' insurance policies, the Junior DIP Agent is also deemed to be the loss payee for the Prepetition RBL Secured Parties under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment of the portion of the Prepetition RBL Debt owed to the Prepetition RBL Secured Parties and <u>second</u>, to the payment in full of the Junior DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted).

37.     *Rights Preserved*.  Notwithstanding anything herein to the contrary, but subject to the RSA, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Credit Documents:  (a) the Junior DIP Agent's, the Junior DIP Lenders', and the Prepetition RBL Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition RBL Secured Parties and/or, subject to, and in accordance with the RSA, the Junior DIP Agent and/or the Junior DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or successor cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy

Code, a chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Junior DIP Agent, the Junior DIP Lenders, and/or the Prepetition RBL Secured Parties.

38.    *No Waiver by Failure to Seek Relief*.  The failure of the Junior DIP Agent, any Junior DIP Lender, or any Prepetition RBL Secured Party to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the Junior DIP Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder or thereunder.

39.    *No Modification of Final Order*.  Until and unless the Junior DIP Obligations have been indefeasibly paid in full in cash or otherwise satisfied in full (such payment being without prejudice to any terms or provisions which survive such discharge by their terms), and until "Payment in Full" (as defined in the Prepetition RBL Credit Agreement) of the Prepetition RBL Claims, and all commitments to extend credit under the Junior DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Junior DIP Agent or the Prepetition RBL Agent, as applicable, (i) any modification, stay, vacatur or amendment to the Interim Order or this Final Order; or (ii) other than as permitted hereunder, the incurrence of a superpriority claim in any of the Chapter 11 Cases or successor cases, equal or superior to the Junior DIP Superpriority Claims or Adequate Protection Claims, other than the Carve-Out; (b) without the prior written consent of the Junior DIP Agent and the Prepetition RBL Agent for any order allowing use of Cash Collateral (other than as permitted hereunder); (c) without the prior written consent of the Junior DIP Agent, any lien on any of the Junior DIP Collateral with priority equal or superior to the Junior DIP Liens, except as specifically provided in the Junior DIP Documents; or (d) without the prior

written consent of the Prepetition RBL Agent, any lien on any of the Junior DIP Collateral with priority equal or superior to the Prepetition RBL Liens or Adequate Protection Liens, other than as permitted under the Prepetition Credit Documents.

40.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

41.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

42.    *Credit Bidding*.  Subject to the priorities set forth in this Final Order, (a) the Junior DIP Agent shall have the right to credit bid, in accordance with the Junior DIP Documents, up to the full amount of the Junior DIP Obligations in any sale of the Junior DIP Collateral, and (b) the Prepetition RBL Secured Parties shall have the right to credit bid up to the full amount of their Prepetition RBL Debt in any sale of the Junior DIP Collateral, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

43.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

44.    *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

45.     *Modification of Automatic Stay*.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order Order, including to:  (a) permit the Debtors to grant, on a final basis, the Junior DIP Liens, Adequate Protection Liens, Junior DIP Superpriority Claims, and Adequate Protection Claims; (b) permit the Debtors to perform such acts as the Junior DIP Agent, the Junior DIP Lenders, and the Prepetition RBL Secured Parties each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties under the Junior DIP Documents, the Junior DIP Facility and this Final Order; and (d) authorize the Debtors to pay, and the Junior DIP Agent, the Junior DIP Lenders and the Prepetition RBL Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order or this Final Order, as applicable.

46.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

47.     *Survival*. The provisions of the Interim Order or this Final Order and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered: (a) confirming any plan  of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any successor cases; (d) amending, modifying or vacating the Interim Order or this Final Order; or (e) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or any successor cases. The terms and provisions of the Interim Order or this Final Order,

including the claims, liens, security interests, and other protections granted to the Junior DIP Agent, the Junior DIP Lenders, and the Prepetition RBL Secured Parties granted pursuant to the Interim Order, this Final Order and/or the Junior DIP Documents, notwithstanding the entry of any orders described in (a)-(d), above, shall continue in the Chapter 11 Cases or any successor cases, or following dismissal of the Chapter 11 Cases or any successor cases, and shall maintain their priority as provided by this Final Order until: (i) in respect of the Junior DIP Facility, all the Junior DIP Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted) (such payment being without prejudice to any terms or provisions contained in the Junior DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the Junior DIP Facility are terminated; and (ii) in respect of the Prepetition RBL Secured Parties, all of the Secured Obligations (as defined in the Prepetition Credit Documents and this Final Order, have been indefeasibly paid in full in cash or otherwise satisfied in full (other than contingent indemnification obligations for which no claim has been asserted).

**Signed:  September 04, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**