United States Courts
Southern District of Texas
FILED

SEP 09 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**In re:**

**HALCON RESOURCES,** *et al.,*
**Debtors.**

**Chapter 11**
**Case No. 19-34446(DRJ)**

## MOTION TO RECONSIDER ORDER FILED SEPTEMBER 4, 2019 "AUTHORIZING ASSUMPTION OF BACKSTOP AGREEMENT"

Creditor Michael Sammons, pro se, moves this Honorable Court to reconsider its Order filed September 4, 2019, Dkt. 224, authorizing Assumption of Backstop Agreement. The importance of that agreement, and the $9,000,000 cost to small unsecured creditors for no benefit at all if the Plan is unconfirmable, requires reconsideration by the Court because (a) the Court overlooked an applicable *pro se* objection, and (b) considering the most important lynchpin of the Plan and giving away $9,000,000 for nothing at all if the Plan is not confirmed without a UCC to protect the interests of small unsecured creditors was a violation of due process rights created by Congress in 11 USC §1102.

In support thereof Mr. Sammons would show as follows:

(1) These consolidated "complex" Chapter 11 cases were filed on August 7, 2019;

(2) On or about August 9, 2019, Mr. Sammons, owner of $865,000 of Halcon Resources unsecured notes due 6/15/2025, formally applied

1

        to the U.S. trustee for appointment to a Unsecured Creditors Committee ("UCC");

(3) On August 15, 2019 Mr. Sammons filed an Objection to the Disclosure Statement and to the Plan, implicitly including the lynchpin equity raise and Backstop Agreement which would not even exist unless the Plan were confirmed on September 24, 2019, alleging that the Plan was unconfirmable under 1129(a)(7); Dkt. 171;

(4) By August 19, 2019 there were two vetted and preliminarily approved prospective UCC members, including Mr. Sammons and another unrelated unsecured creditor;

(5) On August 26, 2019, upon learning that the U.S. trustee would not appoint a UCC unless there were three qualified members, Dr. Elena Sammons, owed $165,000 by the Debtors and the wife of Mr. Sammons, formally applied to be the third member of a UCC.[1]

(6) By letter mailed on August 28, 2019 an unsecured creditor, SC Fund Management, objected to the Plan and specifically the Backstop Agreement, a letter motion which Mr. Sammons would have joined; however, although apparently received on or before September 3, 2019, the court clerk did not file the letter motion until September 5, 2019 and the Court was completely unaware of the letter motion and its objection to the Plan and specifically the Backstop Agreement until after its September 4, 2019 Order. Dkt. 220.

---

[1] Dr. Sammons was apparently disqualified from serving on a UCC, at least so far, solely because of the fact she is married to Mr. Sammons. Such a per se presumption of a conflict of interest solely because two major unsecured creditors are married to each other is arbitrary, unreasonable, and capricious. If a husband and wife can serve on the same jury in a murder trial they should certainly be allowed to serve together independently on the same UCC. See People v. James Soper (husband & wife served together on jury in State of California 2005 murder case/guilty verdict).

(7) On September 2, 2019, after the U.S. trustee's office indicated that no UCC might be appointed, Mr. Sammons filed an emergency motion with the Court for appointment of a UCC, Dkt. 210, explaining in detail why the Plan was patently unconfirmable and why a UCC was required by statute and the needs of the case.

(8) In considering when to schedule a hearing on the September 2, 2019 motion for a UCC the Court was aware that the deadline for objecting to the Plan was September 6, 2019, the deadline for objecting to the Disclosure statement and Confirmation was September 12, 2019, and the confirmation hearing was scheduled for September 24, 2019. See Dkt. 118.

(9) Denying Mr. Sammons's request for a short hearing on September 6, 2019 on the UCC motion, the Court set the hearing regarding appointment of a UCC for September 18, 2019, when, even if granted, no UCC could possibly affect the September 24, 2019 confirmation date, some four business days later.

(10) On September 4, 2019, notwithstanding the *three* Sammons objections and filings forcefully arguing that the Plan was patently unconfirmable under 1129(a)(7), Dkts. 171, 191, and 210, the Court, apparently without even considering those filings, approved a motion by the Debtors authorizing them to give $9,000,000 to certain institutional note holders for "backstopping" a $150 million equity raise central to the proposed prepackaged Chapter 11 Plan, payable even if the Plan was unconfirmable.

There are three problems with the Court approving this Backstop Agreement: (a) the Court overlooked Mr. Sammons's pro se objections which *explicitly* objected to the Disclosure Statement and the Plan as unconfirmable under 1129(a)(7) and *implicitly* to every part of the Plan, such as the Backstop Agreement, which would be impossible unless the Plan were confirmed, (b) due process, indeed the central part of the protections Congress legislated for small unsecured creditors in complex Chapter 11 cases, was completely missing as there was no timely appointed UCC as required by §1102(b)(1) to review this $9,000,000 giveaway of unsecured creditors funds for potentially no benefit at all, and (c) management knew the Plan presented a materially inaccurate and fraudulent Liquidation Analysis presented in the Disclosure Statement, while failing to reveal to all unsecured creditors that they would recover far more in a Chapter 7 liquidation than from this Plan.

## ARGUMENT

Congress mandated, in no uncertain terms, that a UCC be appointed in every complex Chapter 11 case to serve as watchdog over the Debtors and the trustee. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 235, 401 (1978) (creditors' committees will provide "supervision of the debtor in possession and of the trustee, and will protect their constituents' interests."). See 7 COLLIER ON BANKRUPTCY ¶1102.02[1], p. 1102-6 (Alan N. Resnick & Henry J. Somme reds., 16th ed.) ("Appointment of unsecured creditors' committee is mandatory and **the United States trustee must appoint one in all chapter 11 cases**, assuming that there are creditors willing to serve.").

11 U.S.C. §1102(a)(1) creates a due process right to a UCC with its authorized attorneys. Without a UCC, small unsecured creditors have neither the expertise nor means to contest even the most corrupt reorganization plan.

4

And like a judge's appointing an attorney *after* a jury conviction, appointing a UCC *after* all the objection deadlines have passed, and mere days before plan confirmation, deprives small unsecured creditors of every due process right and practical benefit intended by Congress with the passage of §1102(b)(1).

Yes, the Debtors needed large institutions to approve their reorganization plan, a central part of which is an uncontested $35,000,000 in management rewards. So, of course, management gave a $9,000,000 incentive to those large institutions to not look too closely at the numbers (in particular the Liquidation Analysis in the Disclosure Statement) and to approve an unconfirmable plan.

Just as a criminal defendant is entitled to an attorney under the Fifth Amendment (due process), so too are small unsecured creditors entitled to a UCC and its attorneys in a complex Chapter 11 case (also due process). Congress decided that due process under §1102(b)(1) requires that before debts owed to Creditors are massively forgiven or extinguished – or $9,000,000 is given away for potentially no benefit at all - that a UCC and its attorneys are present to ensure that the Debtors are not acting illegally (as in this case, by materially falsifying the Disclosure Statement) and that small unsecured creditors are treated fairly.

### The Court Overlooked a Filed Objection

Mr. Sammons had filed a *pro se* objection to both the Disclosure Statement and the Plan on August 15, 2019. Dkt. 171.

Liberally construing that Objection, as supplemented by two additional filings, Dkt. 191 and 210, as is required of *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Objection alleged that the Plan was unconfirmable

under 1129(a)(7) and therefore *implicitly* objected to any actions of the Debtors which depended upon the Plan being confirmed – such as the Backstop Agreement. Simply stated, Mr. Sammons, having *explicitly* objected to the Disclosure Statement, of which the equity raise Backstop Agreement was key, as well as having *explicitly* objected to the Plan itself, all on the basis of 1129(a)(7), his objection must necessarily and *implicitly* be construed, liberally, as an objection as well to the central part of the Disclosure Statement and the Plan – the equity raise Backstop Agreement – which Agreement would not even exist if the Plan failed under 1129(a)(7).

Should all small unsecured creditors be fined $9,000,000 because Mr. Sammons failed to explicitly state the obvious, "Oh, and because the Plan is unconfirmable, I also object to $9,000,000 being taken from unsecured creditors to finance an equity raise that is only possible as part of a Plan which is patently unconfirmable." Liberally construed or not, surely that should have been read into the Objection to the entire Disclosure Statement and the entire Plan based upon 1129(a)(7).

Everyone understood that the Backstop Agreement was the lynchpin – the single most crucial element - to the Plan, and that unless the Plan were confirmed there would be no backstop or equity raise at all – so why give away $9,000,000 of small unsecured creditors' money when the September 24, 2019 confirmation hearing could well result in rejection of the Plan (and of all its essential parts, like the Backstop Agreement)?

So the question becomes, had the Court considered Mr. Sammons's *pro se* objection to the entire Plan, would the Court have approved the Backstop Agreement knowing that if Mr. Sammons's objection to the Plan under 1129(a)(7) was valid then the Plan was unconfirmable and the Backstop

Agreement useless? Or put another way, would the Court have taken $9,000,000 from small unsecured creditors for an equity raise Backstop Agreement which would provide no benefit at all, now or ever, if the Plan was unconfirmable under 1129(a)(7)?

### A UCC Would Have Contested the Backstop Agreement

The problem with the Backstop Agreement is that the $9,000,000 windfall to the large institutional note holders is that even if the material false and fraudulent Disclosure Statement results in the patently illegal Plan ***not*** being confirmed, the institutions still receive the $9,000,000 from the small unsecured creditors – for nothing!

Had there properly been a UCC in place, its attorneys would almost certainly have required that release of most or all of the $9,000,000 be contingent upon the Plan actually be confirmed on September 24, 2019.

Finally, saying, "Well, any unsecured creditor could have objected to the Backstop Agreement," misses the whole point – first, Mr. Sammons thought he already had, and second, one can always say, well a criminal defendant *could* have challenged an illegal search, or skillfully cross-examined an eye witness, or insisted upon an exonerating DNA test with chain of custody – all without an attorney - and in our case any small unsecured creditor *could* have waded through one thousand pages of filings, including a 400 page Disclosure Statement, and parceled out the obvious Backstop Agreement as improper without the condition precedent of plan confirmation – but the "due process" right here is not the right to make uneducated *pro se* objections, but rather it is the due process right to an attorney. The right to an attorney in a criminal case, as well as the right to a timely UCC and its attorneys in a complex Chapter 11 case, are both rights to counsel required by

"due process" before "life, liberty, **or property**" can be taken through the exercise of government power.

## CONCLUSION

The Court should reconsider its Order of September 4, 2019 as regards approving the Backstop Agreement for two independent reasons:

(1) The Court overlooked an explicit *pro se* objection to the Disclosure Statement and of the Plan, Dkts 171, 191, 210, which objection necessarily and implicitly, *liberally construed*, included an objection to the central Backstop Agreement equity raise contained in the Disclosure Statement and Plan, which would not even be possible if the Plan were not confirmable;

(2) In approving the taking of $9,000,000 from small unsecured creditors regardless whether the proposed Plan was confirmable or not *before* a UCC was appointed, the Court deprived such small creditors of due process – the right to the protection of a UCC and its attorneys pursuant to 1102(a)(1) – who would have certainly required that Plan confirmation be a condition precedent to $9,000,000 of unsecured creditors' rightful funds being given away under the Backstop Agreement.

**WHEREFORE**, because (a) such enormously important financial decisions such as giving away $9,000,000 for potentially nothing at all should not be made until small creditors have the due process protections afforded by 1102(a)(1) through attorneys selected by a UCC, and/or (b) the Court overlooked and failed to consider a *pro se* Objection to the Plan filed on

8

August 15, 2019, supplemented with filings on August 28, 2019 and September 2, 2019, which *implicitly* makes clear that the Backstop Agreement must fall along with the Plan as unconfirmable under 1129(a)(7), the Order of September 4, 2019 giving away $9,000,000 of small unsecured creditors rightful funds, likely for nothing at all, should be (a) vacated, or (b) made contingent upon a confirmable plan.

Respectfully submitted,

/Michael Sammons/
Michael Sammons
1013 10th St # B
Galveston, TX  77550
210-858-6199
michaelsammons@yahoo.com

## Certificate of Service

A true copy of this Objection was served by email on all parties; in addition, the Court Clerk is also requested to file this document in the ECF System for all parties; both this 6th day of September, 2019.

/Michael Sammons/
Michael Sammons

9