**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HALCÓN RESOURCES CORPORATION, *et al.*,**[1] | § | **Case No. 19-34446 (DRJ)** |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMERGENCY MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A), 105(D), 1102(A), AND 1103 AND FED. R. BANKR. P. 2020 FOR ENTRY OF AN ORDER <u>(I) DISBANDING CREDITORS' COMMITTEE OR, IMPOSING FEE CAPPING</u>**
(Relates to ECF No. 254)

The Official Committee of Unsecured Creditors (the "Committee") of Halcón Resources Corporation and its affiliated debtors (the "Debtors") hereby files this objection (the "Objection") to the *Emergency Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 105(d), 1102(a), and 1103 and Fed. R. Bankr. P. 2020 For Entry Of An Order (I) Disbanding Creditors' Committee Or (II) Imposing Fee Cap* (ECF No. 254) (the "Motion to Disband")[2] and in support thereof, respectfully states as follows:

## <u>PRELIMINARY STATEMENT</u>

1. The language of section 1102(a) of the Bankruptcy Code is mandatory. The U.S. Trustee **shall** appoint a committee of unsecured creditors. Judicial review under section 1102 remains limited to the appointment of discretionary committees and to remove members under

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684), Halcón Resources Operating, Inc. (4856), Halcón Holdings, Inc. (5102), Halcón Energy Properties, Inc. (5292), Halcón Permian, LLC (6153), Halcón Field Services, LLC (0280), and Halcón Operating Co., Inc. (3588). The Debtors' mailing address is 1000 Louisiana St., Suite 1500, Houston, TX 77002.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion to Disband. All references to "section" or "rule" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* and the Federal Rules of Bankruptcy Procedure.

subsections (a)(2) and (a)(4). The Court lacks the power to review appointment under subsection (a)(1). Section 105 cannot apply to achieve a result contrary to the Bankruptcy Code after *Law v. Siegel*, 571 U.S. 415 (2014). Cases after *Law* all employ an arbitrary and capricious standard—but only as the statute allows: for discretionary committees and committee member removals. That standard, if applied, still militates against disbandment. The U.S. Trustee undertook a painstaking review of available candidates and out of 7 applications, chose 2 creditors after one creditor withdrew its application. The U.S. Trustee rejected 4 other applications. The Debtors present ***no*** evidence or fact-based allegation that the U.S. Trustee's decision was not based on due deliberation or was arbitrary or capricious. Indeed, it is hard to imagine a more deliberate and considered decision from the office of the U.S. Trustee. Although the Debtors focus on the identity of the Committee's members, the law focuses on the wording of the statute. The U.S. Trustee's appointments under section 1102(a)(1) should not be disturbed because of inconvenience to the Debtors or untrue suppositions.

## **JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3. This matter qualifies as core proceeding pursuant to 28 U.S.C. § 157(b).

4. Venue lies in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **BACKGROUND**

5. On August 7, 2019 (the "Petition Date"), the Debtors each commenced a bankruptcy case, by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of the estates, continuing to operate their business pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On or around the Petition Date, the office of the U.S. Trustee sent out a letter soliciting interest from the largest unsecured creditors of the Debtors to serve on an official committee of unsecured creditors. *See* Exhibit A. The U.S. Trustee received applications from Michael Sammons ("Mr. Sammons") plus two family members , J.P. Morgan Asset Management, Inc. ("JPM") and Loomis, Sayles & Company, L.P. ("Loomis"). The U.S. Trustee determined that JPM and Loomis were ineligible to serve on the committee because the two institutions are investment managers for pensions and mutual funds, not beneficial owners of the Senior Notes. In addition, U.S. Bank ("U.S. Bank"), Indenture Trustee under the Senior Notes Indenture, applied to serve on the unsecured creditors' committee, but later withdrew its application. As a result, in the period of approximately one month following the Petition Date, the U.S. Trustee did not receive sufficient interest from creditors that the U.S. Trustee believed to be qualified for a committee to be appointed.

7. On September 6, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") (ECF No. 228), consisting of Mr. Sammons and SC Fund Management LLC Profit Sharing Plan ("SC Fund Management"), who are, respectively, retail investors and smaller investors holding the Senior Notes.

8. On September 7, 2019, the Committee selected Quinn Emanuel Urquhart & Sullivan, LLP as its counsel, subject to court approval. Subsequently, the Committee selected Opportune LLP as its financial advisor, subject to court approval.

9. As noted above, the U.S. Trustee did not reflexively appoint an Unsecured Creditors' Committee in the first instance. Rather, it considered the interest and eligibility of different unsecured creditors to serve on the committee. The U.S. Trustee received at least 7 applications or indications of interest from creditors holding Senior Notes in this case to serve on

the committee, including JPM, Loomis, U.S. Bank, Michael Sammons, two of his family members and SC Fund Management. The U.S. Trustee only appointed the Committee upon vetting all applicants, and appointed two members after U.S. Bank withdrew its application. If anything, the U.S. Trustee should have appointed JPM and Loomis to the committee as investment managers on behalf their pension and mutual fund clients on behalf of beneficial holders with delegated voting and agency rights in their customer agreements. JPM's representative has served on six different creditors' committees in this capacity.

10. Finally, the Committee invited JPM and Loomis to act as *ex officio*, non-voting members. As of now, Loomis and JPM have expressed a willingness to do so and are considering their options based on the outcome of the hearing on the subject Motion.

11. On September 11, 2019, the Debtors filed the Motion to Disband, as an emergency motion seeking to disband the Committee or alternatively, cap the aggregate fees and expenses of the Committee to $100,000. On the following day, the Ad Hoc Group also filed a Joinder in Support of the Debtors' Motion to Disband ("Ad Hoc Group Joinder") (ECF No. 260).

## OBJECTION

### I. The Bankruptcy Code Does Not Permit the Court to Disband an Official Committee Appointed under Section 1102(a)

12. When a statute expressly grants courts the authority to take certain actions, that express grant implies the prohibition of other actions. *See Gomez v. United States,* 490 U.S. 858, 872 (1989); *Continental Casualty Co. v. United States,* 314 U.S. 527, 533 (1942) ("Generally speaking, a 'legislative affirmative description' implies denial of the nondescribed powers."). Although the Bankruptcy Code explicitly grants courts the authority to appoint *additional* committees under section 1102(a)(2) and change the *membership* of a committee under section 1102(a)(4), nothing authorizes courts to veto the U.S. Trustee's decision to appoint an *official*

*unsecured creditors' committee*. Indeed, the Debtors concede that the Bankruptcy Code provides no explicit authority for the disbandment of official creditors' committees appointed by the U.S. Trustee (Motion to Disband ¶ 13). Neither section 1102(a) nor section 105(a) provides any such authority. And the Debtors' fall back reliance on Bankruptcy Rule 2020 and section 105(d) only serve to prove that their Motion to Disband lacks any foundation in the Bankruptcy Code.

### A. Section 1102(a) Does Not Authorize the Court to Disband an Official Committee Appointed by the U.S. Trustee

13. Section 1102 established carefully calibrated roles for the judiciary and the U.S. Trustee with respect to official committees that intentionally separate administrative and adjudicative functions. Congress established delineated roles for the Court and the U.S. Trustee in committee matters under section 1102. The 1986 amendments to section 1102 reflected Congress's desire to separate the judicial and administrative functions and to shield courts from conflict of interest issues that would arise when deciding disputes between its hand-picked committee and other parties in interest. *See In re Victory Markets, Inc.*, 196 B.R. 1, 3-4 (Bankr. N.D.N.Y. 1995); *see also In re ShoreBank Corp.*, 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012) (discussing the historical development of the role of bankruptcy courts and U.S. Trustees regarding committee membership). The Motion to Disband fails under this legislative backdrop.

14. Recent cases address the Court's ability to supersede the U.S. Trustee's role under section 1102(a)(1). In *In re Caesars Entm't Operating Co., Inc.*, 526 B.R. 265 (Bankr. N.D. Ill. 2015), the debtors sought a court order disbanding a noteholder committee. *Id*. at 266. The Court concluded that it had no authority to disband an official committee under a plain reading of section 1102. "Because section 1102(a) grants specific powers to the Court, and because the power to disband a committee is not one of them, the only fair reading of the statute is that there is no such

power." *Id* at 268. "Nothing in section 1102(a) confers on the court the power to disband a committee that the U.S. Trustee has appointed under section 1102(a)(1)." *Id*.

15. As noted in *Caesars*, the question of a Court's authority to disband an official committee entails a straightforward application of the interpretive doctrine *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another. *Id*. at 268-69 (citing *POM Wonderful LLC v. Coca–Cola Co.*, 573 U.S. 102, 114 (2014)). When a statute expressly grants courts the authority to take certain actions, that express grant implies the prohibition of other actions. The statute expressly grants the Court specific but limited authority under section 1102(a)(4) to order certain changes to a committee appointed under section 1102(a)(1). Under basic principles of statutory construction, section 1102 does not authorize the Court to disband a committee once appointed by the U.S. Trustee under section 1102(a)(1). *See In re New Life Fellowship, Inc.*, 202 B.R. 994, 996 (Bankr. W.D. Okla. 1996) (finding "the specific language . . . of section 1102(a)(1) compel[s] the conclusion that the court . . . is without power to abolish the committee"); *see also In re Dewey & Leboeuf LLP*, No. 12–12321 MG, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012) (stating in dictum, "section 1102 is silent whether a court has the power to disband an additional committee after that committee has been appointed.").

### B. Section 105(a) of the Bankruptcy Code Does Not Authorize the Court to Disband an Official Committee Appointed by the U.S. Trustee

16. The Debtors concede that section 105(a) of the Bankruptcy Code may not be used to create substantive rights that are not otherwise provided for in the Code.[3] (Motion to Disband

[3] The Debtors also cite section 105(d)(1)-(2) as statutory authority for its Motion to Disband (Motion to Disband ¶ 15). However, a plain reading of the statute suggests that it are wholly irrelevant to the situation at hand—they authorize courts to "hold . . . status conferences" and to "issue an order at any such conference . . . ." The Debtors' request here is unrelated to a status conference or an order at such conference. The case suggesting that 105(d) grants such authority is *In re Pacific Avenue, LLC*, 467 B.R. 868 (Bankr. W.D.N.C. 2012) (which, in any event, the Debtors do not cite for such proposition) is out of circuit and based on completely different facts. There, a chapter 11 liquidation trustee was appointed, rendering a unsecured creditors' committee duplicative and unnecessary. *Id.* at 870.

¶ 16). Indeed, "[s]ection 105(a) [ . . ] is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power—and especially when section 1102(a) grants other powers but not that one." *Caesars*, 526 B.R. at 269, citing *New Life Fellowship*, 202 B.R. at 997. The cases cited by the Debtors for the proposition that a court may disband an official committee under section 105(a) were *all* decided before the United States Supreme Court issued its decision in *Law v. Siegel*, 571 U.S. 415 (2014) (See Motion to Disband ¶ 16). The *Caesars* decision, issued after *Law v. Siegel* recognizes the Supreme Court's mandate and commands that section 105 has no application here:

> Section 105(a) confers no such power. That section gives bankruptcy courts the power only to implement existing Code provisions. It is neither an "independent source of rights," nor a source of "substantive authority[.]" Because it is neither, section 105(a) does not allow bankruptcy courts to contradict the Code, *Law v. Siegel*, —such as by exercising powers the Code does not confer[.]
>
> Section 105(a) thus is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power—and especially when section 1102(a) grants other powers but not that one. The approach suggested in [*In re City of Detroit, 519 B.R. 673, 680 (Bankr. E.D. Mich. 2014*)]— that section 105(a) authorizes the exercise of that power because the Code does not "explicitly prohibit" it, is consequently incorrect. Had Congress wanted to give bankruptcy courts the power to abolish committees appointed under section 1102(a) (1), it could have done so. It chose not to. That choice must be respected.

*Caesars*, 526 B.R. at 269-70 (internal citations and quotations omitted). Debtors' counsel made a similar argument in *In re Ditech Holding Corp*., Case No. 19-10412-jlg (Bankr. S.D.N.Y.) (the "Ditech Case), at ECF No. 522, arguing to disband a consumer creditors committee or cap fees at $250,000. Judge Garrity denied that request in an oral ruling attached as Exhibit "A" (the "Ditech Ruling"), and the consumer creditors committee successfully argued against confirmation of the plan that did not meet the best interests of creditors test of § 1129(a)(7) for that subset of consumer creditors. *See* Ditech Case, ECF No. 1240. The *Ditech* Case proves instructive here where a

subset of the unsecured, impaired creditors is not represented by the Ad Hoc Group members that own interests in both Senior Notes plus 26% of outstanding equity.

### C. Bankruptcy Rule 2020 Does Not Authorize the Court to Disband an Official Committee Appointed by the U.S. Trustee

17. Rule 2020 provides only the "***procedure*** for judicial review of the U.S. Trustee's acts or failure to act". Bankruptcy Rule 2020 (emphasis added). The language of this Rule is general, without mention of any particular type of U.S. Trustee's action and does not specifically pertain to the appointment of unsecured creditors' committees.[4] The Debtors quote selectively from the Advisory Committee Notes, wholly ignoring that in that same paragraph, the Notes expressly point out that "[t]his Rule is not intended to limit the discretion of the U.S. Trustee, provided that the U.S. Trustee's act is authorized by, and in compliance with, the Code, title 28, these rules, and other applicable law."

18. Because the Court has no power to disband an official unsecured creditors' committee appointed by the U.S. Trustee under sections 1102(a)(1), 105(a), 105(d) and Rule 2020, the Motion must be denied as a matter of law. Indeed, the Debtors' invitation to depart from the plain language of the statute actually invites reversible error when their focus should be a fully transparent and reasonably vetted confirmation process.

## II. Even if the Court Had the Authority to Review U.S. Trustee's Decision to Appoint an Official Committee, the U.S. Trustee's Decision Was Not Arbitrary And Capricious

19. Cases addressing the U.S. Trustee's appointment of ***additional*** unsecured creditors committee or ***removing*** committee members all apply an arbitrary and capricious standard. *In re Barney's, Inc.,* 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996) (committee member removal subject to

---

[4] The standards and authority for courts to review actions taken by the U.S. Trustee may differ depending on the type of action taken by the U.S. Trustee. For example, as applicable here, section 1102(a)(4) explicitly provides the courts a role in changing the membership of a committee appointed by the U.S. Trustee. In contrast, the Bankruptcy Code is silent on the courts' role in disbanding a committee appointed by the U.S. Trustee.

"arbitrary and capricious" standard); *In re JNL Funding Corp.*, 438 B.R. 356 (Bankr. E.D.N.Y. 2010) ("Despite limited case law on this issue, the majority of courts holds that the bankruptcy court has the inherent power, as well as the statutory authority under section 105(a), to review acts of the UST, under an 'arbitrary and capricious' or 'abuse of discretion' standard of review."); *In re Orion Healthcorp, Inc.*, 596 B.R. 228, 238 (Bankr. E.D.N.Y. 2019) (citing *In re JNL Funding Corp.* for the proposition that "judicial review of action by the UST in carrying out a power specifically delegated by Congress, such as composition of a creditors committee, should be under the *arbitrary and capricious* standard.") (emphasis added).

20. "A decision is not 'arbitrary and capricious' unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful." *In re Barney's, Inc.*, 197 B.R. at 439; *see also State of N.Y. Dep't of Soc. Servs. v. Shalala*, 21 F.3d 485, 492 (2d Cir. 1994) (in determining whether agency has acted arbitrarily and capriciously, court may not substitute its judgment for that of agency but must determine whether agency's decision was based on consideration of relevant factors and whether there has been clear error of judgment) (internal quotation marks and citations omitted). Indeed, the Supreme Court instructs that a U.S. agency's decision should be upheld, even one "of less than ideal clarity if the agency's path may reasonably be discerned." *Nat'l Ass'n v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007).

21. To meet this exceptionally high standard, the Debtors "must present '*substantial evidence*' that the U.S. Trustee acted arbitrarily and capriciously." *Watkins Motor Lines, Inc. v. I.C.C.*, 641 F.2d 1183, 1188 (5th Cir. 1981)) (emphasis added). They have failed to do so. Indeed, the Debtors present no relevant evidence and stop short of advancing allegations about the U.S. Trustee's decision-making, preferring to attack the committee members themselves. The Debtors'

allegations do not meet its burden here to show that the U.S. Trustee's decision was based on an erroneous conclusion of law, lack of record forming the basis for a reasonable decision, or any other indication that the decision was patently unreasonable, arbitrary, or fanciful.

22. Debtors do not argue, for example, that the U.S. Trustee's decision to appoint the Committee violated any section of the Bankruptcy Code or the Bankruptcy Rules. Indeed, section 1102(a)(1) *requires* the U.S. Trustee to appoint a committee of unsecured creditors. 11 U.S.C. 1102(a)(1) ("… as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee ***shall*** appoint a committee of creditors holding unsecured claims). *See also* 7 COLLIER ON BANKRUPTCY ¶ 1102.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) ("Appointment of an unsecured creditors' committee is *mandatory* and the U.S. Trustee *must* appoint one in all chapter 11 cases, assuming that there are creditors willing to serve.") (emphasis added). The U.S. Trustee carried out its duties by appointing the Committee in this case, and nothing supports a finding that the decision was arbitrary or capricious.

23. While current members of the Committee are small or retail investors who hold smaller percentages of the Senior Notes as compared to other institutional investors, the U.S. Trustee's decision does not run afoul of the Bankruptcy Code and the Bankruptcy Rules. *See* 7 COLLIER ON BANKRUPTCY ¶ 1102.02 ("Use of the term 'ordinarily' in section 1102(b)(1) [for appointing creditors who hold the seven largest claims] is intended to provide general guidance but not to create an immutable requirement."). If anything, the Court could require the appointment of Loomis and JPM whose applications were rejected even though they exercise discretionary authority over more than 100 beneficial holder accounts and voted against the Plan.

24. The Debtors cite no case law holding that the U.S. Trustee's appointment of an official committee of unsecured creditors was arbitrary or capricious under similar circumstances.

In fact, each of the cases cited by the Debtors proves inapposite and all pre-date *Law v. Seigel*. Here, the Debtors' proffered cases either: (a) did not involve court review of an affirmative decision of the U.S. Trustee under section 1102(a)(1) of the Bankruptcy Code to appoint a mandatory creditors' committee; (b) can easily be distinguished on its facts or the basis for the holding; (c) actually weigh against disbanding the Committee:

a. ***In re City of Detroit, Mich.*, 519 B.R. 673 (Bankr. E.D. Mich. 2014).** In this out-of-circuit ***chapter 9*** case, the Court disbanded the unsecured creditors committee appointed by the U.S. Trustee because section 1102(a) does not apply in chapter 9. The Court's alternative reasoning was that the committee was not cooperative with the process, explicitly disavowed the mediation process underway, and would likely incur substantial costs and fees. In contrast, here, the Committee is willing to work cooperatively with the Debtors to resolve its concerns regarding the confirmability of the Plan. Additionally, with less than ten (10) days before the confirmation hearing, the Committee is unlikely to incur relatively high fees.[5]

b. ***In re JNL Funding Corp.,* 438 B.R. 356, 360 (Bankr. E.D.N.Y. 2011).** This case cited by the Debtors actually weighs ***against*** disbanding the Committee. The Court there ***denied*** the motion to disband the unsecured creditors' committee appointed by the U.S. Trustee, holding that "action by the UST in carrying its power specifically delegated by Congress under section 1102 of the Bankruptcy Code should ***only*** be set aside if the UST relied on factors which Congress has not intended it to consider in appointing members to a committee." *Id*. at 363 (emphasis added). Further, the Court held that the U.S. Trustee's decision in determining who to appoint to the unsecured creditors' committee by looking at the debtor's largest unsecured creditors and appointing those creditors on list that responded to inquiry by the UST and indicated that they were willing to serve on committee, was neither arbitrary nor capricious. *Id.*

c. ***In re Pacific Avenue, LLC,* 467 B.R. 868 (Bankr. W.D.N.C. 2012).** In this out-of-circuit case, the Court disbanded the unsecured creditors' committee on different facts, including (1) ***a chapter 11 trustee*** was appointed, who adequately represented the interest of unsecured creditors, rendering the unsecured creditors' committee duplicative and unnecessary, (2) the committee's effort was ineffective, manifesting itself in repetitive and redundant requests for information, (3) combining the previous two facts, the committee's expenses became a burden on the estate without benefits. Here,

[5] Criticized in *Caesars*, 526 B.R. at 269-70.

there is no trustee appointed, and the Court specifically emphasized the importance of transparency to all parties in this case.

d. ***In re Voluntary Purchasing Groups, Inc.,* No. 4:96CV396, 1997 WL 155407, at *3 (E.D. Tex. Mar. 21, 1997).** The District Court affirmed the Bankruptcy Court's decision to remove creditors representing a certain type of unsecured claim, because their interests were "vastly dissimilar" from creditors holding two other types of unsecured claims. In contrast, here, the Debtors' motion is to disband the Committee, not to change the Committee's composition. Section 1102(a)(4) authorizes the Court to change the membership of a committee, but there is no such authorization for the Court to disband a committee appointed by the U.S. Trustee.

e. ***In re NTK Holdings, Inc.*, No. 09-13611 (Bankr. D. Del. 2009), ECF No. 232); *In re TCI 2 Holdings, LLC*, No. 09-13654 (JHW) (Bankr. D.N.J. 2009) (ECF No. 940) Transcript of Hearing at 25:3-27:8, *In re Hawkeye Renewables, LLC*, No. 09-14461 (KJC) (Bankr. D. Del. Mar. 1, 2010).** These three cases involve asking the bankruptcy court to appoint a committee where the U.S. Trustee did not appoint one. In all three cases, the courts declined to overrule the U.S. Trustee's decision, explaining that based on the facts of each case, there was no clear error on the part of the U.S. Trustee. These cases also concluded that the U.S. Trustee's decision not to appoint a committee where there was insufficient interest or the committee members would not be representative of all unsecured claims was not arbitrary or capricious. These cases support upholding the U.S. Trustee's decision – whether to appoint or not appoint an unsecured creditors' committee.

25. Without appropriate statutory or case law support, the Debtors' Motion to Disband displays their unhappiness with the inconvenience occasioned by the appointment of the Committee. That, undoubtedly, does not make the U.S. Trustee's decision arbitrary and capricious. And the Debtors simply ignore the fact that the U.S. Trustee's decision was made after careful deliberation, following weeks of continued discussion with creditors in this case, in response to at least 7 applications or indications of interest to serve on the committee, and as a result of measured review of the eligibility and willingness to serve by the applicants.

## III. Confirmation Timing Weighs Against, Not in Favor, of Disbanding the Committee.

26. The concern that the appointment of the Committee at this stage of the bankruptcy would " put these chapter 11 cases and the Prepackaged Plan in jeopardy" or "delay[] the cases or

disrupt[] confirmation" (Motion to Disband ¶ 24) is beside the point and should not affect the determination of whether the Committee is disbanded. Representation and due process for unsecured creditors cannot suffer because of Debtors' desire to avoid delay or for the benefit of secured creditors. *Cf. In Matter of Motors Liquidation Co.*, 829 F.3d 135, 161 (2d Cir. 2016) ("While the desire to move through bankruptcy as expeditiously as possible was laudable, Old GM's precarious situation and the need for speed did not obviate basic constitutional principles. Due process applies in even in a company's moment of crisis.").[6] In fact, the Debtors' aggressive confirmation timeline weighs against, not in favor of, disbanding the Committee. The fact that the confirmation hearing is currently scheduled in less than a week only highlights the compelling need for unsecured creditors to be sure that the Debtors do not run roughshod over the rights of the unrepresented. As mandated by the Court Order on September 12, 2019 (ECF No. 259), all parties deserve transparency in this process. And, as stated above, running roughshod over the clear statutory mandate and well-reasoned decisions under section 1102(a)(1) only invites reversible error when the Debtors should prefer to work towards a clean and fair process as to which no viable appeal could lie.

27. In addition, there is no evidence indicating that the U.S. Trustee did not appoint a committee "as soon as practicable" in this case. Evidence will show that the U.S. Trustee acted as quickly as practicable to appoint a committee, and the timing was not for lack interest expressed by unsecured creditors. Two applications were rejected and one application was withdrawn. As soon as there were more than one unsecured creditors who were willing to serve on the committee, the U.S. Trustee carried out its duty in appointing such a committee.

---

[6] The Second Circuit also criticized the Bankruptcy Court's reasoning that adequate representation for individuals would not have changed the outcome, because courts should not hypothesize what the outcome would have been if the individuals had adequate representation at the negotiating table. *See id.* at 166.

## IV. The Debtors' Assertion that Committee Members Cannot Serve as Fiduciaries Is Unwarranted and Not Evidence of an Arbitrary or Capricious Decision

28. The fact that Mr. Sammons and SC Fund Management have filed objections to the Debtors' Plan does not make the U.S. Trustee's decision to appoint the Committee arbitrary and capricious. See 7 COLLIER ON BANKRUPTCY ¶ 1102.02 ("There is nothing inherent in a creditor's fiduciary duty to other creditors that requires the creditor to favor a debtor's reorganization or to refrain from serious disagreements with the debtor.") Further, the Debtors' allegations that Mr. Sammons and SC Fund Management are using the Committee as a platform for their own interests at the estates' expense (Motion to Disband ¶ 19) lack any evidentiary support and fall far short of meeting the Debtors' burden to show "substantial evidence" here. Contrary to the Debtors' unsubstantiated assertions, the Committee as constituted consists of two creditors from the only impaired creditor class (Class 4) – one who is unable to participate in the Senior Notes Rights Offering and one who elected to participate in the Senior Notes Rights Offering. The Committee invited JPM and Loomis to participate as *ex officio* members to gather the investment management views of these two institutions. Far from representing a few rogue voices, the Committee exists to test the assumptions and conclusions in the plan for the benefit of unsecured creditors – particularly those that do not also hold equity interests disproportionately benefited by the Plan. *See* Verified Statement Pursuant to Bankruptcy Rule 2019 of Ad Hoc Group of Bondholders, ECF No. 135 (disclosing 43,097,707 shares owned by Ad Hoc Group or 26% out of 164,256,015 total outstanding (*see* Declaration of Albert Conly at ECF No. 27, p. 13)).

29. The Debtors ignore the fact that Mr. Sammons and SC Fund Management can and are allowed to take positions in their individual capacity, separate from their capacity as members of the Committee. Since the appointment of the Committee, however, the Committee itself has

only filed one motion to request a continuance of the confirmation hearing (ECF No. 258). The Committee acts as both a voice and a filter for the unrepresented.

30. The Committee asked the Debtors to resolve any disputes consensually, prioritized discovery and information requests, and is willing to work cooperatively with the Debtors to resolve the Committee's concerns regarding the confirmability of the Plan. The Committee takes seriously its role to review the Debtors' actions and analysis to insure that the process proves fair, transparent and worthy of equitizing $625 million in unsecured bond debt while still distributing significant value to equity. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) ("a personal stake in the outcome of the controversy . . . assure[s] that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . .").

31. The Debtors' allegation that Mr. Sammons and SC Fund Management, as Committee members, would harm all unimpaired general unsecured creditors has no basis in fact. As fiduciaries to all unsecured creditors, including those holding Class 4 Senior Notes Claims and Class 5 General Unsecured Claims, the Committee's goal is to increase the ***overall*** recovery of Class 4 and Class 5 unsecured creditors. And because the Plan impairs Class 4 creditors *only*, their representation on the Committee makes sense. The Debtors argument that one unimpaired class of unsecured creditors precludes the appointment of a committee defies logic and would allow a plan to unimpair a small group of unsecured creditors to thwart any committee appointment to represent the balance of impaired creditors. As exemplified by the Ditech Ruling, the Bankruptcy Code does not establish a system that small and unrepresented creditors must bend to the will of the larger debt holders, that, in this case, act with feet in two classes.

## V. Debtors' Request To Cap Committee Fees Should Be Denied

32. The Debtors cite no case law supporting their position that the Committee's fees should be capped, and their attempt to couch this unreasonable request on section 1103 does not

withstand more than superficial scrutiny. "Section 1103 of the Code addresses the powers and duties of committees appointed under section 1102. [. . .] Nothing in section 1103 authorizes a bankruptcy court to define those powers and duties in such a way as to place limits on a committee's activities beyond the limits in section 1103 itself." *Caesars*, 526 B.R. at 270.

33. In any event, a cap on fees is entirely inappropriate under the circumstances for the following reasons:

a. Here, unsecured creditors indisputably have rights that must be protected under the Bankruptcy Code that no other fiduciary protects.

b. Setting an artificial one-sided "cap" on the Committee based on nothing more than desire for an unequal playing field is wholly inappropriate and has no support in the Bankruptcy Code. The Code unbiasedly provides that fees of debtors and statutory committees are of equal rank and importance. Fees incurred by the Debtors to push through a plan with obvious flaws has no greater validity in the eyes of the law than an official committee's fees in defending such rights. Moreover, as acknowledged by the Debtors, with only one week leading up to the Confirmation Hearing, and, given that the Committee is focused on confirmation issues and not proposing to conduct any unnecessary discovery, fees are likely to be relatively low—especially compared to the Debtors' professionals in this case.

c. Professional fees are subject to approval by the Court and any fees on account of work that does not fall within the scope of the Committee's fiduciary role may be denied by the Court. Like all retained professionals, the Committee professionals have the obligation to comply with section 330 and the U.S. Trustee Guidelines. The Committee is not seeking to bar the Debtors, Ad Hoc Group, or any other party in interest, including the U.S. Trustee, from objecting to its fees if they are unreasonable.

## CONCLUSION

34. For the foregoing reasons, the Official Committee of Unsecured Creditors respectfully requests that the Court (i) deny the Motion to Disband and (ii) grant such other and further relief as the Court deems just and proper.

Dated: September 17, 2019
Houston, Texas

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

/s/ *Patricia B. Tomasco*
Patricia B. Tomasco
Texas State Bar No. 01797600
Devin van der Hahn
Texas State Bar No. 24104047
711 Louisiana, Suite
500 Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email:pattytomasco@quinnemanuel.com
devinvanderhahn@quinnemanuel.com

-and-

Victor Noskov
Stella Li
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: victornoskov@quinnemanuel.com
stellali@quinnemanuel.com

***Proposed Counsel for the Official Committee of Unsecured Creditors***

**CERTIFICATE OF SERVICE**

I, Patricia B. Tomasco, hereby certify that on September 17, 2019, a true and correct copy of the foregoing document was served via the ECF system, to the parties on the ECF service list.

/s/ *Patricia B. Tomasco*
Patricia B. Tomasco