**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**HENRY G. HOBBS, JR.**
**ACTING UNITED STATES TRUSTEE**
**REGION 7, SOUTHERN and WESTERN DISTRICTS OF TEXAS**
**HECTOR DURAN**
**TRIAL ATTORNEY**
**515 Rusk, Suite 3516**
**Houston, Texas 77002**
**Telephone: (713) 718-4650 x 241**
**Fax: (713) 718-4670**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO.** |
| | § | |
| **HALCON RESOURCES CORPATION,** | § | **19-34446 (DRJ)** |
| ***et al.*,** | § | **(Chapter 11)** |
| | § | **Jointly Administered** |
| | § | |
| | § | **Hearing Date:** |
| **DEBTORS**[1] | § | **September 18, 2019, at 9:30 a.m.** |

**ACTING UNITED STATES TRUSTEE'S OBJECTION TO EMERGENCY MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 105(d), 1102(a), AND 1103 AND FED. R. BANKR. P. 2020 FOR ENTRY OF AN ORDER (I) DISBANDING CREDITORS' COMMITTEE OR (II) IMPOSING FEE CAP**

TO THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Henry G. Hobbs, Jr., the Acting United States Trustee for Region 7 (the "U.S. Trustee"), by and through the undersigned counsel, who respectfully objects to the Emergency Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 105(d), 1102(a), and 1103 and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Halcón Resources Corporation (0684), Halcón Resources Operating, Inc. (4856), Halcón Holdings, Inc. (5102), Halcón Energy Properties, Inc. (5292), Halcón Permian, LLC (6153), Halcón Field Services, LLC (0280), and Halcón Operating Co., Inc. (3588). The Debtors' mailing address is 1000 Louisiana St., Suite 1500, Houston, TX 77002.

Fed. R. Bankr. P. 2020 for Entry of an Order (I) Disbanding Creditors' Committee or (II) Imposing Fee Cap (the "Motion") [2](Dkt. No. 254) as follows:

## I. Preliminary Statement[3]

As he was required to do by 11 U.S.C. § 1102(a)(1), the U.S. Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases on September 6, 2019. Section 1102(a)(1)'s language is mandatory: "the United States trustee **shall appoint** a committee of creditors holding unsecured claims . . ." 11 U.S.C. § 1102(a)(1) (emphasis added). In fulfilling his statutory obligation, the U.S. Trustee solicited general unsecured creditors in these cases to determine whether there was sufficient interest to form a committee. Ultimately, there was sufficient interest, and the U.S. Trustee appointed the Creditors' Committee to represent the interests of, and to be a fiduciary for, all unsecured creditors.

Despite the specific and clear terms of section 1102(a)(1), the Debtors now ask the Court to vacate the U.S. Trustee's mandatory appointment of the Creditors' Committee pursuant to the court's equitable authority under section 105. Although the Court has certain enumerated statutory powers over committees appointed by the U.S. Trustee under section 1102(a)(1), disbanding the committee is not one of them. Rather, section 1102 established carefully calibrated roles for the judiciary and the U.S. Trustee with respect to official committees, which is part of the Code's intentional separation of administrative and adjudicative functions. And neither section 105 nor Rule 2020 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") can authorize relief

[2] The Ad Hoc Group has filed a joinder in support of the Motion, to which the U.S. Trustee also objects. Dkt. No. 260.
[3] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to them below. All other capitalized terms used but not defined in this Objection have the meaning ascribed to them in the Motion.

inconsistent with another provision of the Code. The Motion fails as a matter of law and should be denied.

Additionally, the U.S. Trustee objects to the alternative relief that the Creditors' Committee be constrained by being subject to cost limits defined by the Debtors and imposed on no other estate-paid professionals. The Creditors' Committee should be permitted to fulfill its fiduciary obligations to its constituents and its statutory mandate. Nevertheless, the U.S. Trustee shares the Debtors' concerns about cost containment, particularly in large complex cases—a concern reflected in the United States Trustee Guidelines for Reviewing Applications for Compensation. Thus, the U.S. Trustee suggests that specific concerns about costs are better handled in the retention and fee application context.

For the foregoing reasons, as more fully detailed below, the Court should deny the Motion.

## II. Jurisdiction, Venue & Constitutional Authority to Enter a Final Order

1. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

2. The Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the U. Trustee consents to the entry of a final order or judgment by this Court in this matter.

3. Henry G. Hobbs, Jr. is the duly appointed U.S. Trustee for Region 7, Southern and Western Districts of Texas, under 28 U.S.C. § 581(a)(7).

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise, appear, and be heard on any issue in a case or proceeding under the Bankruptcy Code.

5. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Specifically, the U.S. Trustee is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code, including monitoring the progress of such cases and taking such actions as the U.S. Trustee deems to be appropriate to prevent undue delay in such progress. 28 U.S.C. § 586(a)(3)(G).

## III. Factual Background

### A. General Information

6. On August 7, 2019 ("Petition Date"), the Debtors filed petitions seeking relief under chapter 11 of the Bankruptcy Code. Since the orders for relief under chapter 11 were entered, the Debtors have operated as debtors in possession under 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

7. On August 7, 2019, the Court entered the Order directing joint administration of these bankruptcy cases. Dkt. No. 28.

8. On August 7, 2019, the Debtors filed the Disclosure Statement and Joint Prepackaged Chapter 11 Plan ("Prepackaged Plan"). Dkt. Nos. 19 and 20. The Prepackaged Plan reflects that there are two impaired classes that are entitled to vote: Class 4 (Senior Note Claims) and Class 7 (Existing Equity Interests). Plan, Art. III.3.3. Class 5 (General Unsecured Claims) is unimpaired and deemed to accept the Plan. *Id.*

9. On August 8, 2019, the Court entered the Interim Order ("Interim Trade Claims Order"), which authorized the Debtors to pay some or all of the prepetition claims of trade creditors in an aggregate amount not to exceed $38 million. Dkt. No. 71.

**B. Committee Solicitation and Formation**

10. On August 9, 2019, a committee solicitation package was emailed or mailed to each of the unsecured creditors on the List of Creditors Who Have the 30 Largest Unsecured Claims.

11. Prior to August 15, 2019, the U.S. Trustee received requests to serve on a committee from: (a) U.S. Bank National Association ("U.S. Bank"), the indenture trustee for the Senior Notes; (b) Loomis Sayles & Company, an investment manager for more than $50 million of the Senior Notes; (c) Michael Sammons; the actual holder of $900,000 of the Senior Notes; and (d) A & B Valve & Piping, a trade creditor. At that point in time, A & B Valve & Piping held a Class 5 General Unsecured Claim, which was unimpaired under the Plan and which most likely would be paid under the Interim Trade Claims Order.

12. In or about the morning of August 16, 2019, Alfredo R. Perez, counsel for the Debtors, phoned the undersigned because he had heard that the U.S. Trustee would be appointing a committee in these cases. After confirming what he had heard, Mr. Perez asked about the committee's composition. He expressed surprise that U.S. Bank would request to serve on a committee and stated that a committee would be inappropriate in these cases because of the Prepackaged Plan. Later that morning, Mr. Perez informed the undersigned about a planned telephone conference call at 1:00 p.m. regarding a direction letter to be prepared by Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for the Ad Hoc Group, for the purpose of getting U.S. Bank to "stand down" from its request to serve on a committee. Later that afternoon, Joanne L. Molinaro and John P. Melko, attorneys with Foley & Lardner, LLP who represented U.S. Bank, phoned the undersigned and requested that the U.S. Trustee defer the committee appointment until the close of business on August 21, 2019, because some bondholders had expressed concerns that

they wanted to address. On August 19, 2019, Ms. Molinaro sent the undersigned an email withdrawing the request of U.S. Bank to serve on a committee.

13. After August 19, 2019, the U.S. Trustee received requests to serve on a committee from: (a) Elena Sammons, the wife of Michael Sammons and an actual holder of $170,000 of the Senior Notes; (b) Stephen Sammons, the son of Michael Sammons and an actual holder of $62,000 of the Senior Notes; (c) J.P. Morgan Investment Management Inc., an investment manager for almost $45 million of the Senior Notes; and (d) SC Fund Management LLC Profit Sharing Plan, the beneficial owner of $796,000 of the Senior Notes.

14. On September 6, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors. Dkt. No. 228.

## IV. The Statutory Framework

### Section 1102 Confers Important, but Different, Authority on Courts and U.S. Trustees with Respect to Official Committees

15. Section 1102(a) of the Code governs the formation, appointment, and modification of official committees. It provides under what circumstances and pursuant to which standards a court and the U.S. Trustee may act in connection with official committees. Congress gave the U.S. Trustee and courts important, but divergent, authority with respect to committees in chapter 11.

16. The U.S. Trustee appoints all official committees and, as appropriate, monitors membership and occasionally modifies their composition. 11 U.S.C. § 1102(a)(1) and (2). The subsection of section 1102 relevant to this Motion, section 1102(a)(1), provides that "the United States trustee **shall appoint** a committee of creditors holding unsecured claims . . ." 11 U.S.C. § 1102(a)(1) (emphasis added). That language is mandatory, and the U.S. Trustee must appoint a committee of unsecured creditors unless such a committee cannot be appointed due to lack of interest or lack of eligible and suitable candidates.

17. Section 1102 also confers important, but different, authority on courts with respect to official committees. A court's authority over committee formation and membership is limited, and a court may, if requested, order the following four types of relief:

- order the U.S. Trustee to appoint additional committees if necessary to assure adequate representation;
- order the U.S. Trustee to change committee membership if necessary to ensure adequate representation;
- order that a committee not be appointed in a small business case; or
- order the U.S. Trustee to increase committee membership to include a creditor that is a small business concern.

11 U.S.C. § 1102(a)(1)-(4).

18. "Those are the only powers over committees the Code gives the court. There are no others." *In re Caesars Entm't Operating Co.*, 526 B.R. 265, 268 (Bankr. N.D. Ill. 2015). Courts are nowhere empowered to disband committees appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1). *Id*. at 268-270. The relative and delineated roles for the Court and the U.S. Trustee in committee matters under section 1102 are no accident. The 1986 amendments, which established the United States Trustee system on a permanent, nationwide basis (except for North Carolina and Alabama), reflected Congress's desire to separate the judicial and administrative functions and to screen courts from administrative functions that could raise conflict of interest issues. *See In re Victory Markets, Inc.*, 196 B.R. 1, 3-4 (Bankr. N.D.N.Y. 1995); *see also In re ShoreBank Corp.*, 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012) (discussing the historical development of the role of bankruptcy courts and United States Trustees regarding committee membership). It is against this statutory framework and legislative backdrop that the Motion must be considered.

## V. Argument

### A. Appointment of the Creditors' Committee is Mandatory Under Section 1102(a)(1)

19. It is well established that section 1102(a)(1) of the Bankruptcy Code ***requires*** the U.S. Trustee to appoint a committee of unsecured creditors in every case (as long as eligible and suitable unsecured creditors are willing to serve):

> (1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee **shall appoint** a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

11 U.S.C. § 1102(a)(1) (emphasis added).

20. The plain language of section 1102(a)(1) says the U.S. Trustee "shall" appoint an unsecured creditors' committee. 11 U.S.C. § 1102(a)(1); *see also In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990) (holding that the word "shall" in the Bankruptcy Code denotes compulsion and mandatory obligation, not discretion); *In re Cochener,* 360 B.R. 542 (Bankr. S.D. Tex. 2007) (holding that the use of "shall" in section 343 of the Bankruptcy Code "leaves no doubt that '[a]ppearance at a Section 341 meeting is mandatory. It is not waivable.' If this interpretation is not the plain meaning of the statute, then there is no such thing as a plain meaning.") (citing *In re Keiser,* 204 B.R. 697, 700 (Bankr. W.D. Tex. 1996); *United States v. Ron Pair Enters.,* 489 U.S. 235, 242-43 (1989)). Accordingly, the U.S. Trustee's duty to appoint an unsecured creditors' committee is mandatory.

21. Moreover, contrary to the Debtors' arguments, the U.S. Trustee is required to form a committee in prepackaged cases in the same manner as all other cases (with the exception of small business cases, if a court so orders). *See* Motion at 25. The Debtors cite no case law holding that committees are somehow not required in prepackaged cases; instead, they cite one decision

that did not even involve a prepackaged plan and a few unpublished court orders denying a party in interest's motion seeking appointment of a committee in various prepackaged cases in which the U.S. Trustee attempted to form a committee, as is his obligation, but did not find sufficient interest.[4] In one of the prepackaged cases the Debtors cite, *TCI 2 Holdings*, the court's ruling recognized the mandatory nature of the U.S. Trustee's obligation to form a committee of unsecured creditors: "And, clearly, as well, we understand that 1102(a)(1) requires the US Trustee to appoint an Unsecured Creditors Committee. And -- the use of the term "shall," of course, underscores the mandatory nature of that obligation. It seems to me that the United States Trustee fulfilled its responsibility by attempting to form, in the usual course, the Committee unsuccessfully, because there was insufficient interest when that attempt was made." *In re TCI 2 Holdings, LLC*, No. 09-13654 (JHW) (Bankr. D.N.J. 2009) (Dkt. No. 940), Transcript of Nov. 25, 2009 Hearing at 24-25.

22. Finally, in fulfilling his responsibility to appoint a committee, the U.S. Trustee has not sought to usurp the power of the Court, nor has the U.S. Trustee unduly delayed. *See* Motion at 23, 26. On September 3, 2019, when the Motion to Appoint a Committee was filed, the U.S. Trustee had been diligently working to find a sufficient number of interested, eligible, and suitable creditors to appoint to a committee. *See* Motion to Appoint a Committee at 2. Once that occurred, the U.S. Trustee appointed the Creditors' Committee on September 6, 2019, as he was required to do by the Code—no court order required. The Motion to Appoint a Committee has since been withdrawn. Dkt. No. 264.

---

[4] *See In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (court denied bondholders' request to appoint an additional committee); *In re NTK Holdings, Inc.*, No. 09-13611 (Dkt. No. 232) (court denied motion to compel the U.S. Trustee to appoint a general unsecured creditors committee where U.S. Trustee attempted to form committee but did not find sufficient interest); *In re TCI 2 Holdings, LLC,* No. 09-13654 (JHW) (Bankr. D.N.J. 2009) (Dkt. No. 940) (same); *In re Hawkeye Renewables, LLC,* No. 09-14461 (KJC) (Bankr. D. Del. Mar. 1, 2010) (same).

**B. The Bankruptcy Court Has No Authority to Disband the Creditors' Committee**

23. "Section 1102(a) does not authorize the court to disband [an official committee.]" *Caesars*, 526 B.R. at 269. Because section 1102(a) grants a court specific powers over committees but not the power to disband, "the only fair reading of the statute is that there is no such power." *Id.* at 268. *See In re New Life Fellowship, Inc.*, 202 B.R. 994, 996 (Bankr. W.D. Okla. 1996) (finding, in the context of the appointment of an additional committee, "the specific language ... of section 1102(a)(1) compel[s] the conclusion that the court ... is without power to abolish the committee"). The authority of a bankruptcy court to direct that section 1102(a)(1) committees not be appointed is limited to cases of small business debtors. *See* 11 U.S.C. § 1102(a)(3). The court in *Caesars* recognized this principle in the context of the U.S. Trustee's appointment of an additional committee under section 1102(a)(1). 526 B.R. at 268. The court concluded that it had no authority to disband an official committee under a plain reading of section 1102.

24. Because section 1102 expressly gives the Court specific but limited authority over certain committee matters, the absence of express authority for a court to disband any section 1102(a)(1) committee in cases other than small business cases is significant. Several canons of statutory construction are instructive here. First, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (internal citations omitted). Second, *expressio unius est exclusio alterius*—the express mention of one thing excludes all others. *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 677 (1935); *Caesars*, 526 B.R. at 268-69 (*citing POM Wonderful LLC v. Coca–Cola Co.*, 573 B.R. U.S. 102, 114 (2014)). The statute expressly grants courts specific but limited authority to order certain

committee changes but provides courts with no specific authority to disband a committee in any case other than a small business one. Under these two principles of statutory construction, section 1102 therefore does not authorize the Court to disband an unsecured creditors committee.

25. Bankruptcy Rule 2020 cannot be used to read into section 1102 authority that is not there. The Debtors' contention that the rule allows the Court to review "any act" by the U.S. Trustee is clearly incorrect as a matter of law. *See* Motion at ¶ 14. Bankruptcy Rule 2020 "is "merely a procedural device to challenge the U.S. Trustee's actions and does not confer any substantive rights." *In re Victory Markets, Inc.*, 196 B.R. 1, 5 (Bankr. N.D.N.Y. 1995); *see also* 28 U.S.C. § 2075 (The Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right").

**C. Section 105 May Not Be Used to Circumvent Section 1102(a)(1)**

26. Nor can the Court grant the Debtors the relief they seek under section 105 given the clarity and specificity of section 1102(a). "Section 105(a) . . . is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power—and especially when section 1102(a) grants other powers but not that one." *Caesars*, 526 B.R. at 269 (citing *New Life Fellowship*, 202 B.R. at 997). "It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (citations omitted).

27. As noted above, section 1102(a) expressly limits the cases where the Court may direct that an unsecured creditors committee not be formed—small business cases. 11 U.S.C. § 1102(a)(3). By allowing courts to dispense with committees only in a limited subset of cases,

Congress implicitly barred courts from doing so in others. An order disbanding a general unsecured creditors' committee or directing that one should not be appointed other than in a small business chapter 11 case would contravene section 1102(a) and therefore would not be a proper order under section 105(a). *See Law v. Siegel*, 571 U.S. at 422.

28. While the Debtors also seek relief under section 105(d), they fail to mention that section 105(d)(2) specifically prohibits a court from entering an order "inconsistent with another provision of [title 11]. . . ." 11 U.S.C. § 105(d)(2). It is difficult to imagine an order more inconsistent with another provision of title 11 than an order disbanding a committee appointed by the U.S. Trustee under section 1102(a)(1).

29. "'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" *Hibbs v. Winn*, 542 U. S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181–186 (rev. 6th ed. 2000)). A holding that courts may disband or preclude the appointment of committees in any reorganization case pursuant to section 105 would render 11 U.S.C. § 1102(a)(3) superfluous, because a court in a small business case would need to resort to that authority to dispense with a committee. If Congress wanted bankruptcy courts to have the authority to disband all committees appointed under section 1102(a)(1) or to preclude their appointment in the first instance, it easily could have granted them that authority, as it did in small business and railroad cases. *See* 11 U.S.C. §§ 1102(a)(3) and 1161. It did not.

30. The cases cited by the Debtors for the proposition that courts have ordered the disbandment of an official committee under section 105 were all decided before the United States Supreme Court issued its decision in *Law v. Siegel*. The *Caesars* decision, which was issued after *Law v. Siegel*, is on point and instructive:

> Section 105(a) confers no such power. That section gives bankruptcy courts the power only to implement existing Code provisions. It is neither an "independent source of rights," nor a source of "substantive authority[.]" Because it is neither, section 105(a) does not allow bankruptcy courts to contradict the Code, *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014)—such as by exercising powers the Code does not confer[.]
>
> . . . The approach suggested in *City of Detroit*— that section 105(a) authorizes the exercise of that power because the Code does not "explicitly prohibit" it, is consequently incorrect. Had Congress wanted to give bankruptcy courts the power to abolish committees appointed under section 1102(a) (1), it could have done so. It chose not to. That choice must be respected.

*Caesars*, 526 B.R. at 269-70 (internal citations and quotations omitted).[5]

31. The Debtors cite only one case other than *Detroit* where a court actually disbanded a mandatory committee.[6] In *In re Pacific Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012), the court concluded that a mandatory unsecured creditors' committee was no longer helpful once a chapter 11 trustee was appointed and relied upon section 105(d)(2) to disband it. Although the court purported to base its decision on section 105(d)(2), it did not address the statute's requirement that a court's case-management order not conflict with other provisions of the Code. Instead, the court decided that because chapter 7 cases have trustees but no committees, chapter 11 cases for which a trustee is appointed no longer need committees.

32. This analysis is fatally flawed. First, the initial premise is wrong because chapter 7 cases can have creditors' committees. 11 U.S.C. § 705.[7] Second, reading chapter 11 cases with trustees out of sections 1102 and 1103 of the Code makes no sense, given the frequent references

---

[5] The *Caesars'* court was referring to *In re City of Detroit*, 519 B.R. 673, 680 (Bankr. E.D. Mich. 2014).

[6] The Debtors also cite *In re JNL Funding Corp.*, 438 B.R. 356, 363-65 (Bankr. E.D.N.Y. 2010), which was similarly decided prior to *Law v. Siegel*, and in which the court did not actually disband the committee.

[7] Such committees are rare, presumably because chapter 7 lacks a corollary to section 1103(a) and thus their professionals are generally not entitled to compensation from the estate.

to "the trustee" in those sections (*see, e.g.*, section 1103(d), which requires the trustee to meet with a newly-appointed section 1102 committee to "transact such business as may be necessary and proper.) The word "trustee" in chapter 11 generally includes the debtor in possession. 11 U.S.C. § 1107(a). But if the *Pacific Ave.* court were correct that chapter 11 committees are not necessary unless the debtor is in possession, the drafters of the Code would not have worded sections 1102 and 1103 to include both trustees and debtors in possession. Congress is capable of expressing itself clearly when it intends to differentiate between trustees and debtors in possession. *See* 11 U.S.C. § 1107(a). The *Pacific Ave.* case was wrongly decided and should not be followed in any respect.[8]

33. The Debtors' attempt to use section 105 to impose an "arbitrary and capricious" standard of review over the U.S. Trustee's decision to appoint a mandatory committee from inapplicable case law is plain wrong.[9] *See* Motion at 16. The Debtors appear to confuse and conflate the standard for the U.S. Trustee exercising his mandatory duty to appoint an official

[8] *Pacific Ave.* was decided in the Western District of North Carolina, which is not a United States Trustee Program district. Accordingly, the U.S. Trustee did not and could not supervise the administration of that case or litigate the committee issue. Instead, the court, through the Bankruptcy Administrator, appointed the committee under section 1102(a)(1) as well as the chapter 11 trustee. This is an important distinction when interpreting issues of administrative and adjudicative authority between a U.S. Trustee and a court in the Bankruptcy Administrator districts (in North Carolina and Alabama).

[9] The majority of the cases the Debtors cite for the proposition that section 105 imposes an arbitrary and capricious review standard relate to requests for removal of committee members to ensure adequate representation rather than disbanding an official committee. *See In re Voluntary Purchasing Groups, Inc.*, No. 4:96CV396, 1997 WL 155407, at *3 (E.D. Tex. Mar. 21, 1997) (court affirmed order of bankruptcy court removing certain members of committee); *In re First Rep. Bank Corp.*, 95 B.R. 58, 60 (Bankr. N.D. Tex. 1988) (court held that U.S. Trustee did not act arbitrarily and capriciously and declined to remove member of committee). While the court in *In re JNL Funding Corp.* considered a creditor's motion to disband the committee, the court appeared to review the U.S. Trustee's appointment of the members to a committee, not the appointment of the committee itself, under the arbitrary and capricious standard and declined to remove the members. 438 B.R. 356, 363-65 (Bankr. E.D.N.Y. 2010). In any event, these decisions inappropriately use section 105 to grant the court authority not found in the Code, and each was decided prior to *Law v. Siegel*. The other case cited, *Campos–Guardado v. I.N.S.*, 809 F.2d 285, 289 (5th Cir. 1987), is unrelated to the bankruptcy or the U.S. Trustee context and completely irrelevant to this issue.

committee under section 1102(a)(1) with the standard a court applies when determining a request for an order directing the U.S. Trustee to change the membership of a committee under section 1102(a)(4). As discussed above, section 1102(a)(1) is clear and unambiguous that the U.S. Trustee "shall" appoint a committee of creditors holding unsecured claims. 11 U.S.C. §1102(a)(1). In contrast, when a party seeks an order from a court directing a change in membership of a committee, the court asks whether it is "necessary to assure adequate representation," as the well-reasoned opinion in *In re ShoreBank Corp*. makes clear. 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012). In *ShoreBank*, the movants sought a change in committee composition based on the allegation that the committee was not adequately representative. The movants argued that the court should review the committee appointment under a "*de novo*" standard, while the official committee argued for a deferential "arbitrary and capricious" standard. *Id.* at 161. But the court correctly reasoned that under section 1102(a)(4) the standard of review is a "red herring" because "there is no 'standard of review.'" *Id.* 161-163. The court recognized that section 1102(a)(1) does not require the U.S. Trustee to "provide a rationale or make a record" when appointing the mandatory official committee. *Id.* Therefore, "there is nothing for a court to review—other than the bare decision itself, that is—and without a rationale or a record no meaningful review can take place." *Id.* at 162.

34. In any event, it is not at all unusual for a committee to represent constituencies of varying and sometimes opposing interests. Indeed, a "committee is a catalyst for negotiation and compromise between the parties in the reorganization process." *Enron*, 279 B.R. at 690. Conflicts are "inherent in any committee," and "the mere presence of conflicts . . . is insufficient to show a lack of adequate representation." *ShoreBank*, 467 B.R. at 161 (citing *In re Garden Ridge Corp.*, 2005 WL 523129, at *4 (Bankr. D. Del. March 2, 2005)). Committee members have fiduciary

duties to represent fairly all such interests: "Courts recognize, as well, that committee members have fiduciary obligations to the other creditors, obligations that constrain what might otherwise be permissible, self-interested behavior." *Id.* (citing *In re Nation-wide Sports Distribs.*, 227 B.R. 455, 463–64 (Bankr. E.D.Pa. 1998)). As a result, a conflict among committee members results in a lack of adequate representation only when the member breaches or will imminently breach its fiduciary duty or when extreme conflict prevents the committee from functioning effectively. *Id. at *4, *8.*

35. While the Debtors argue that the members of the Creditors' Committee are dissimilar to other creditors in these cases, their main argument seems to be that they should not be responsible for the Creditors' Committee fees and that there was an absence of demand to serve from other creditors. *See* Motion at 19-21. Lack of overwhelming interest in service on a committee is no barrier to appointment of such a committee as long as the U.S. Trustee can find a sufficient number of eligible and suitable creditors, as he has done here. Moreover, it is somewhat self-serving for the Debtors to argue lack of interest when they apparently set in motion an effort that resulted in at least one large creditor who had expressed interest *not* to serve on the committee. And while, as discussed below, the issue of fees should be addressed separately, clearly debtors availing themselves of the chapter 11 process should expect certain expenses will be attributable to the estates when they are clearly set out in the Code—as the mandatory nature of official committees is in section 1102(a)(1).

**D. Creditors' Committee Fees Should Be Addressed as Part of the Application Process**

36. The U.S. Trustee also objects to the alternative relief that the Creditors' Committee be subject to cost limits defined by the Debtors and imposed on no other estate-paid professionals. As explained in *Caesars*, "Section 1103 of the Code addresses the powers and duties of committees

appointed under section 1102. [. . .] Nothing in section 1103 authorizes a bankruptcy court to define those powers and duties in such a way as to place limits on a committee's activities beyond the limits in section 1103 itself." 526 B.R. at 270. The Creditors' Committee should be permitted to fulfill its fiduciary obligations to its constituents and its statutory mandate.

37. Nevertheless, the U.S. Trustee shares the Debtors' concerns about cost containment, particularly in large complex cases – a concern reflected in the United States Trustee Guidelines for Reviewing Applications for Compensation. Thus, the U.S. Trustee suggests that specific concerns about costs are better handled in the retention and fee application context. Any professionals retained by the Creditors' Committee, like all retained professionals, will have the obligation to comply with section 330 and the United States Trustee Guidelines. Should any professional perform tasks that are neither reasonable nor necessary, the parties may and should object to the professionals' fees when presented for court approval.

## VI. Conclusion

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order denying the Motion.

Dated: September 17, 2019

Respectfully Submitted,

HENRY G. HOBBS, JR.
ACTING UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN
DISTRICTS OF TEXAS

By: /s/ Hector Duran
Hector Duran
Trial Attorney
Texas Bar No. 00783996
515 Rusk, Suite 3516
Houston, TX 77002
Telephone: (713) 718-4650 x 241
Fax: (713) 718-4670

CERTIFICATE OF CONFERENCE

I hereby certify that on September 17, 2019, I conferred via telephone with Alfredo R. Perez of Weil, Gotshal & Manges LLP, general bankruptcy counsel for the Debtors, about the Objection raised by the U.S. Trustee but the parties were unable to resolve the matter.

/s/ Hector Duran
Hector Duran

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means on all Pacer System participants in these bankruptcy cases, on the 17th day of September, 2019.

/s/ Hector Duran
Hector Duran