IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-34446-H2-11 |
| | § | HOUSTON, TEXAS |
| HALCON RESOURCES COMPANY, | § | WEDNESDAY, |
| ET AL, | § | SEPTEMBER 18, 2019 |
| DEBTORS. | § | 9:56 A.M. TO 11:01 A.M. |

MOTION TO DISBAND THE COMMITTEE

BEFORE THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES: SEE NEXT PAGE

COURTROOM DEPUTY / ERO: VRIANA PORTILLO

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
Tel: 281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| FOR THE DEBTOR: | WEIL GOTSHAL & MANGES, LLP<br>Alfredo R. Perez, Esq.<br>Cliff W. Carlson, Esq.<br>700 Louisiana, Ste. 1700<br>Houston, TX 77002<br>713-546-5040 |
| | WEIL GOTSHAL & MANGES, LLP<br>Gary T. Holtzer, Esq.<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>212-310-8000 |
| ALSO PRESENT: | RICH LITTLE, CEO<br>WALTER MAYER, COUNSEL<br>BURT CONNOLLY, CRO |
| FOR THE AD HOC GROUP OF UNSECURED BONDHOLDERS AND JUNIOR DIP LENDERS: | PAUL WEISS<br>Robert Britton, Esq.<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>212-373-3000 |
| FOR THE AD HOC GROUP OF SENIOR NOTEHOLDERS: | PORTER HEDGES, LLP<br>Eric English, Esq.<br>1000 Main St., Ste. 3600<br>Houston, TX 77002-6336<br>713-226-6648 |
| FOR CO-EXPRISE, INC. DBA CX ENERGY: | HAYNES & BOONE, LLP<br>David Trausch, Esq.<br>1221 McKinney, Ste. 2100<br>Houston, TX 77010<br>713-547-2257 |

APPEARANCES (CONT'D):

| | |
|---|---|
| FOR US BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE 6.75% SENIOR NOTES DUE 2025: | FOLEY GARDERE<br>Sharon M. Beausoleil, Esq.<br>1000 Louisiana, Ste. 2000<br>Houston, TX 77002<br>713-276-5086 |
| FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS: | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Patricia B. Tomasco, Esq.<br>Devin van der Hahn, Esq.<br>711 Louisiana St., Ste. 500<br>Houston, TX 77002<br>713-221-7227 |
| FOR THE US TRUSTEE: | DEPARTMENT OF JUSTICE<br>Hector Duran, Jr., Esq.<br>Alicia McCullar, Esq.<br>515 Rusk, Ste. 3516<br>Houston, TX 77002<br>713-718-4650 |

HOUSTON, TEXAS; WEDNESDAY, SEPTEMBER 18, 2019; 9:56 A.M.

THE COURT: All right. Let me go to the 9:30, I have Case No. 19-34446, Halcon Resources Corporation. We'll take appearances, first in the courtroom, please.

MR. PEREZ: Good morning, Your Honor.

(Conference unmuted.)

MR. PEREZ: Good morning, Your Honor.

THE COURT: Good morning.

MR. PEREZ: Alfredo Perez, Weil Gotshal, along with my partner, Gary Holtzer and Cliff Carlson from our firm, and then we have Mr. Rich Little, who is the CEO, and Walter Mayer, who is the counsel, as well as Burt Connolly, our CRO.

THE COURT: All right. Thank you. Good morning, everyone.

MR. BRITTON: Good morning, Your Honor. Bob Britton, Paul Weiss, on behalf of the Ad Hoc Group of Unsecured Bondholders and Junior DIP Lenders.

THE COURT: Thank you. Good morning.

MR. BRITTON: Thank you, Your Honor.

Mr. English?

MR. ENGLISH: Good morning, Your Honor. Eric English from the Porter Hedges Law Firm here on behalf of the Ad Hoc Group of Senior Noteholders.

THE COURT: All right. Thank you. Good morning.

MR. ENGLISH: Thank you.

MR. TRAUSCH: David Trausch from Haynes & Boone, here on behalf of Co-Exprise, doing business as CX Energy.

THE COURT: Thank you. Good morning.

Ms. Beausoleil?

MS. BEAUSOLEIL: Good morning, Your Honor. Sharon Beausoleil of Foley & Lardner on behalf of the US Bank National Association, as Indenture Trustee for the 6.75 percent Senior Notes due 2025.

THE COURT: Thank you. Good morning.

Ms. Tomasco?

MS. TOMASCO: Good morning, Your Honor. Patty Tomasco on behalf of the Official Committee of Unsecured Creditors. With me in the courtroom is Devin van der Hahn.

THE COURT: All right. Thank you. Good morning both of you.

Mr. Duran?

MR. DURAN: Good morning, Your Honor. Hector Duran and Alicia McCullar with the Department of Justice on behalf of the US Trustee.

THE COURT: All right, terrific. Thank you. Good morning, both of you.

All right. Anyone on the telephone wish to make an appearance?

(No audible response.)

THE COURT: All right. Mr. Perez, do you want to just take a couple of minutes? There are obviously a number of things on the Docket this morning. Do you want to tell me what progress you've made and what progress you haven't made?

MR. PEREZ: Yes, Your Honor. Happy to do that.

Your Honor, I believe there's really only one matter remaining.

THE COURT: Okay.

MR. PEREZ: And that's the Motion to Disband the Committee.

THE COURT: All right.

MR. PEREZ: And Your Honor, just by way of background, we -- as the Court knows, we're set for Confirmation next week on Tuesday. We received either two or three objections to Confirmation. One of those objections had been for Mr. Sammons (phonetic) and as of last night, we are told Mr. Sammons resigned from the Committee and withdrew all his objections. So we now have a Committee of one.

Additionally, Your Honor, the two objections -- two or three objections that are remaining, one is from the UCC, represented by Ms. Tomasco. Additionally, we received one from a software licensee, who which I think we will resolve -- I think it was more of a prophylactic objection.

And then we have the objection that the Court dealt with at the Second Day Hearing from SC Funds, which is the -- one of the members of the Committee, the sole remaining member of the Committee, and that objection, to the extent it's still live, would be the only other objection to Confirmation.

Your Honor, this morning we are filing the voting certificate, which indicates that all classes have accepted the Plan. There was only two impaired classes. The Class IV, the noteholders, and the equity in the case, so we're moving forward. With respect to that, tomorrow is our deadline to file all of our papers in support of confirmation, so we will meet the 5:00 o'clock deadline tomorrow.

THE COURT: All right.

MR. PEREZ: And get not only our responses to the objections filed, but declarations putting forth our affirmative case in connection.

And Your Honor, we're ready to meet our burden as we go forward. so I think the only -- all of Mr. Sammons' pleadings that were set for today, including his motion to appoint a Committee, have all been either withdrawn or mooted, and the only thing we're here on is the Motion to Disband and we're ready to proceed at the Court's convenience.

THE COURT: All right. Thank you.

Let me make the circle, if I could?

Mr. Duran, do you now find yourself in a situation where you have a Committee of one?

MR. DURAN: As I understand it, that's what's occurred.

THE COURT: Okay. How does that practically function?

MR. DURAN: I don't know, Your Honor.

THE COURT: Especially given the one Committee member -- which I'm not criticizing. I mean, he was very clear in what he has filed -- and I say, he, it, however you want to deal with that -- in terms of what the motivation or what the agenda was. I mean, I always appreciate transparent agendas. I mean, it's very clear where that focus is, but how practically does a Committee of one function?

Quite honestly, I've never seen a Committee of one.

MR. DURAN: SC Fund Management, LLC profit sharing plan is that one remaining member.

THE COURT: Right.

MR. DURAN: However, there are two other ex-officio type members. These are the two investment managers who have been working with the Committee. They're

not actual members. The US Trustee didn't actually appoint them. It's an issue I want to take up with my client.

THE COURT: Right.

MR. DURAN: About whether we want to reconstitute the Committee at this point in time, or not.

THE COURT: Okay. So -- and given, at least as we sit here today, our current schedule, what practically does that mean? I mean, you've got to have a conversation. I don't know whether this is one that requires input from Washington or not. That's not part of what I do every day.

And given where we're headed, again, on our current schedule, I'm just trying to get an idea of what I can expect and what -- just because, you know, you know how I am. I like to think through all the branches of the decision tree and I'm trying to figure out exactly what's there.

MR. DURAN: I think it might be appropriate, given what has occurred, to have that talk with my client to see what my client wants to do.

THE COURT: Got it.

And again, not trying to get into the internal workings of the US Trustee's Office, is this a conversation with Ms. Livingstone? Is it a conversation with Mr. Hobbs? Is it a conversation with Mr. White? And again, I --

MR. DURAN: All of the above.

THE COURT: All of the above. Fair enough, okay.

But I'm just trying to get a sense of when and how quickly that occurs. I mean, if you told me it were -- and I'm making this up -- if you told me that it was Mr. Hobbs and he's in the building today, I mean, I then -- okay, I mean, maybe we need to adjourn until 10:30. I got it, but you're saying you need to run through the entire process?

MR. DURAN: Right.

THE COURT: Okay. I got it. Okay. Thank you.

Ms. Tomasco, where do you find yourself?

MS. TOMASCO: I find myself in a very interesting position, Your Honor.

THE COURT: Yeah.

MS. TOMASCO: So just to be clear, the Committee has done what you would expect a Committee to do. We have taken the last -- I think this is Day Ten for me, and kicked the tires, and run the numbers. We counted the ballots. We made sure that all of the elements of Confirmation had a healthy and efficient check, and that's what we've been doing.

THE COURT: Okay.

MS. TOMASCO: Currently, we have run a liquidation analysis. We hired Opportune. It's a very well-respected oil and gas advisory firm, and we feel confident that the best interest of creditors test won't be met at

Confirmation.

The preliminary numbers indicate that the liquidation analysis that's attached to the Disclosure Statement is flawed and the Debtors' advisors have advised us that it will change and even then, we think it has some critical assumptions that are false or not market. And that with that information, we will have a clear objection to Confirmation that should be heard by the Court in order to ensure that the elements of 1129 have been met.

THE COURT: Right. So let me ask you: There are two things that are sort of floating through my head, and is one, how do you function without a democratic process? I mean, you have -- it's effectively you have one individual who issues you instructions, which is really difficult because it's hard to have that, you know, which hat are you wearing? You know, I want to make sure that you understand that you're sitting here with your Committee hat on, not your individual hat.

And when you have -- I'm making this up -- a group of five, it's a whole lot easier to make sure that you find the right middle ground, than it is -- again, I've never seen a Committee of one, and it scares -- it just scares me to death because I don't -- you know, I don't have any confidence that all of the competing concerns are being appropriately managed. And I'm not suggesting that there's

anything wrong, it's just when you have -- a lot of times when you have the diversity of, in my example, five --

MS. TOMASCO: Uh-huh.

THE COURT: -- that in large part ensures that the process works the right way because you've got a natural pull and tug with everybody and that's why you like a very diverse Committee.

And so I'm struggling with that and quite frankly, I don't know what to do about that.

And the second part of all of this is, you know, the request was two-fold. It was, one, disband the Committee; or two, put a cap on the compensation at this point. And I didn't see -- I didn't see really a thoughtful analysis of, okay, you know, we're willing to live with a cap of X unless the following things occur-type thing, which obviously is a much easier thing for me to figure out what to do with.

And have you had thoughts about that, or did you have a conversation with your client about that? I mean, what's -- and how do you even go through that analysis with just one?

MS. TOMASCO: Those are -- that was a run-on sentence, Your Honor.

THE COURT: It was.

MS. TOMASCO: If I might say so. The issues are

multi-fold. I'm sitting here and I have a -- you know, we picked, I think, a very competent valuation company in Opportune, and if I'm looking at a Class IV recovery under a very preliminary evaluation and liquidation analysis that's 41 percent to 66 percent, whereas the Plan provides 21 percent --

THE COURT: So here's my real question: So I was trying to tiptoe around it. So what happens when Mr. Perez goes to your client and says: We'll give you the participation that you wanted?

MS. TOMASCO: First of all, the remaining Committee member has already elected to participate in the participation.

THE COURT: Okay.

MS. TOMASCO: All right. So he is not among the people that are complaining about the non-participation distribution.

I do think it's a flaw of the Disclosure Statement compared to other Disclosure Statements describing distributions under an in-or-out participation agreement, that they didn't reveal that if you don't elect to participate, your recovery under this Plan is 11 percent and not 21 percent, and that's nowhere in the Disclosure Statement.

So what we're talking about here are some serious

flaws that may be corrected by some small adjustments to the recoveries under the Plan. I'm not suggesting that this is an all-or-nothing proposition. I'm saying that, you know, with a reasoned viewpoint, I think you can come to the conclusion that some things in the Plan need to be adjusted.

When I have a -- if the liquidation analysis had come back that we -- that the Debtor was going to meet the best interest test, I wouldn't be standing here. But because the liquidation analysis came back from Opportune showing that it does not, that is a serious flaw in the Plan that I think needs to be addressed

We have advocated with the US Trustee repeatedly to add JPMorgan and Loomis that have been asking to be on this Committee from the beginning. They are the investment advisors to pension funds and mutual funds, and they act with agency on behalf of their clients on behalf of beneficial holders.

They've been on several Creditor Committees before and they're anxious to be on this one because they share the view that this Plan has a flaw that needs to be corrected for the benefit of their clients, so.

THE COURT: All right. I don't have the ability to influence that.

MS. TOMASCO: No, you don't.

THE COURT: I can disband the Committee and you

can try to go convince the US Trustee to start over, but you know, I don't have any say-so in who's on the Committee.

MS. TOMASCO: No, that's correct, Your Honor. You lack discretion to either disband this Committee. You have discretion to appoint or remove members --

THE COURT: Oh, I have discretion to disband it. You said I lack discretion to disband it. I can disband it. I can order it reconstituted, but I can't appoint members.

MS. TOMASCO: If you read the cases, it makes very clear that after *Law v. Siegel*, 105 does not alter -- allow you to alter the plain meaning of the statute that excludes the Court's oversight over the appointment of a Committee under 1102(a)(1).

THE COURT: Yeah, but you're telling me that if I conclude that I have a one-member Committee who is furthering its self-interests that I don't have the ability to disband that Committee?

MS. TOMASCO: If you don't have evidence of that member --

THE COURT: That wasn't the question I asked you.

MS. TOMASCO: Okay. If you have evidence that he's furthering his own personal interests --

THE COURT: Which I'm not suggesting that he does, but you forced me into making that comparison.

MS. TOMASCO: Then, yes, and if you have evidence,

then you could --

THE COURT: Yeah.

MS. TOMASCO: -- remove that Committee member and allow the US Trustee an opportunity to reappoint a reconstituted Committee.

THE COURT: I'm not sure what the difference was between that and what I said, but okay. All right. Fair enough.

All right. Anything else you want me to know?

MS. TOMASCO: We think that by indulging in a disbandment of the Committee, the Court would be in viewing the process with potential reversible error, I think that the best way for the Debtors to proceed is to allow the tires to be kicked and for Confirmation to proceed as quickly as it's proceeding with an oppositional force that tests those metrics, particularly when unsecured creditors under their own analysis are getting paid 22.1 cents and there's a 9 percent initial equity distribution to exist -- new equity distribution to existing equity.

Those metrics --

THE COURT: Is that -- I'm sorry. Go ahead. I interrupted.

MS. TOMASCO: Those metrics invite scrutiny in and of themselves.

THE COURT: So are you saying that what I ought to

do is that I ought to leave the Committee in place, whether it's one or more, and then the way that I ought to deal with -- 'cause the argument is -- that argument that's being made is that it's -- there can't be a benefit from the Committee and so should I just take that as a way of measuring compensation, but leave the Committee in place? Is that what you're arguing?

MS. TOMASCO: Your Honor, compensation is always on the table and I will never negotiate away the rights of others to review my compensation. That's always on the table.

THE COURT: Okay. All right. Fair enough.

MS. TOMASCO: And I'm not trying to be obtuse here, if --

THE COURT: But you're doing an awfully good job.

MS. TOMASCO: No, look, compensation is compensation. If I've tilted at a windmill I shouldn't have tilted in at, you know you can review that.

THE COURT: Well, I know I can, but I also have the responsibility for a process, not just this case, and I have a problem. And what -- if you haven't figured out, I do believe there's a problem.

And what I'm trying to do is I have before me the smartest minds in the country with respect to this process, and I'm looking for help in trying to find a solution. If

that isn't obvious, I'll be blunt about it.

And this is not a criticism, but it's an observation, none of you are helping me, and so, you know, left to my own devises, I mean, there are a lot of you who know me, and you know how I think, I am not a baby-splitter. And while I'm looking very hard for help, if you put me to task about all of this, I'm going to do it without reservation. I'm not going to try and give everybody something, just because I don't believe that's the way the world works.

So again, I'm not looking for a response. It's just, you know, I don't often ask for help. And I'm asking and no one wants to help me, so I just want you to tell me, I feel like that I'm asking and I'm being ignored. And so feeling that way, and now that you know, then I'm going to proceed ahead in a way that, you know, makes sense to me.

MS. TOMASCO: Your Honor, if you want to know what I think should happen, that is that we should give the US Trustee a chance to appoint additional members, if that's what their -- if that's what they decide. I think that leaving us on -- after last night getting a resignation and showing up this morning to address a motion that was filed a week ago, puts the Committee in a very awkward position. It puts the US Trustee in an awkward position.

THE COURT: Right.

MS. TOMASCO: I think the timing is unfortunate and doesn't allow the Court to make a decision based on the facts as they are or could be once the US Trustee has time to act.

THE COURT: So do you know why the resignation was made?

(Telephone interruption.)

MS. TOMASCO: It's -- why? It speaks for itself in that once sufficient enough information was provided, there was a thought that getting off the Committee would -- well, I've had -- I can't say on the Record. I've had conversations with the US Trustee about the reasons for the resignation, and I'd like to leave it at that.

THE COURT: Okay.

MS. TOMASCO: I'm consulting with the US Trustee about precisely what to do.

THE COURT: Okay. Fair enough. I wasn't trying to put you in a bad spot. Thank you.

Mr. Duran?

MR. DURAN: I'd like to propose that maybe I have that conversation with my clients, assuming, of course, that the Court would be willing, the Debtors, and the Unsecured Creditors Committee, I could report back at whatever time you'd want me to come back and see if we have some sort of a decision about what to do at this point.

THE COURT: Okay.

MR. PEREZ: We don't have a problem with that, Your Honor. And we're not here today on the US Trustee.

THE COURT: Got it. So let me ask you -- and again, I want to give you -- I mean, I've got -- you know, I've got 44 people on the telephone, I've got 30 more in the courtroom. You know, I've got a motion set for hearing today. I intend on hearing it, absent you-all telling me that you want to do something different.

It's -- you have -- I do have my noon class, which I try to keep my promise to those young folks and have class, but the morning asked to come in the afternoon, so we've moved them to the end of the day. So you have my attention except for from 12:00 to 1:00. You have my attention until 2:00 o'clock.

What makes sense for everybody?

MR. PEREZ: Your Honor, maybe if we could report back in 45 minutes and see where we are, and then at that point --

THE COURT: Fair enough. Let me do this --

MR. PEREZ: -- or half an hour?

THE COURT: You will make sense, I mean.

MR. DURAN: I would say an hour.

THE COURT: So how about --

MR. DURAN: 11:15?

THE COURT: -- so 11:15. Can we do 11:00 o'clock? Because if not, if we're going to go forward -- I mean, we can do a lot in an hour. We can -- 45 minutes tends to slip away from me before I blink an eye.

MR. PEREZ: But before we do that, Your Honor, I do want to respond to a couple of things that Ms. Tomasco said just because at my age, I'll forget them next time.

THE COURT: Okay. Fair enough.

MR. PEREZ: So Your Honor, with respect to the other two people that she's referring to, you know, these were people that who we negotiated the RSA with and then decided that they didn't want to be on the Committee. So you know, I've got -- there's an issue there, okay?

THE COURT: Okay.

MR. PEREZ: That's number one.

Number two, and this is where I'm really struggling, Your Honor, the objection that she said is a best interest objection, which is available to dissenting members of consenting class.

So now what you're being asked to do is to sanction a Committee that is of dissenting members of otherwise consenting class. That's what you -- and let's not make -- let's make sure we don't lose track of that.

THE COURT: All right.

MR. PEREZ: Because that's what you're being asked

to do.

THE COURT: And to ask you to pay for it.

MR. PEREZ: Exactly. And we already paid --

THE COURT: And I got that issue.

MR. PEREZ: We already paid for the majority.

THE COURT: Right.

MR. PEREZ: Okay? We already paid for the majority. That's exactly what we're being asked to do.

THE COURT: I got that.

Let's do this -- and we've got 44 people on the telephone, so Mr. Perez, I'm going to ask you, if you would, maybe you need to write it down so you don't forget.

(Laughter.)

THE COURT: At 11:00 o'clock, let's assume that you get something back from the US Trustee and you need more time. I don't want the folks on the telephone not to know what's going on, so what I would ask that you do is at 11:00 o'clock, if you could just come in. I'm going to leave the phone line on. Folks can put me on mute or whatever they'd like to do, but at 11:00 o'clock if you would come in and make an announcement so the people on the telephone know exactly what's going on?

So folks on the telephone, Mr. Perez as Debtors' counsel would come in at 11:00 o'clock and just give you a status report as to what he believes is going on, i.e., the

request for more time has been made, we're going to resume in just a couple of minutes, but just to give you a status report so you're not wondering where the process is.

MR. PEREZ: We'll do that, Your Honor.

THE COURT: And then if you would just -- if Ms. Portillo is out here, if you'd just let her know what you need and if she's not here for some unknown reason, just have somebody buzz on Chamber's doors and either Ms. Portillo or Mr. Alonzo will come out.

MR. PEREZ: Thank you.

THE COURT: All right. Thank you. We'll be adjourned.

COURTROOM DEPUTY: All rise.

(Recess taken from 10:20 a.m. to 10:59 a.m.)

AFTER RECESS

COURTROOM DEPUTY: All rise.

THE COURT: All right. Thank you, everyone. Please be seated.

Mr. Duran, do we want to start with you?

MR. DURAN: Yes, Your Honor. I talked to my client. My client has decided to disband the Committee. Right after this hearing, I will file a notice disbanding the Committee.

THE COURT: All right. Thank you.

And for the Record, I just want everybody to know,

evidently a copy of the resignation notice was sent to my law clerk, as well as to Mr. Alonzo, and quite honestly when I went home yesterday, I just ignored everybody. And so I hadn't seen it, so my apologies for not seeing it.

All right. So with that announcement?

MR. PEREZ: Our motion is moot, so we'll withdraw it.

THE COURT: Do you have any objection to simply memorializing that with a Docket Entry?

MR. PEREZ: Absolutely not, Your Honor.

THE COURT: I'm just trying to make it easy on you.

MR. PEREZ: Absolutely not, Your Honor.

THE COURT: All right. Then we'll just note by Docket Entry that based upon the announcement by the United States Trustee, that the motion -- that the Debtors' Motion to Disband is withdrawn without prejudice as moot.

MR. DURAN: Sounds good, Your Honor.

THE COURT: That work?

MR. DURAN: It works.

THE COURT: Okay. All right. Thank you.

Where does that leave us? I mean, since we're all here, is there anything else we need to talk about?

MR. PEREZ: I don't think so, Your Honor. I think obviously we're getting ready for a hearing next week.

THE COURT: Got it. Let me ask you, because we are going to have -- I would like for you to have a conversation with Ms. Tomasco. I mean, she certainly did undertake the representation believing that she had a job to do and I assume that you'll work through compensation issues with -- I guess, both her firm, as well as Opportune.

Was there anyone else?

MS. TOMASCO: That was it, Your Honor.

THE COURT: Okay. All right.

MR. PEREZ: Absolutely, Your Honor. And we anticipated that that would, you know, happen and we're happy to have those discussions.

THE COURT: All right, terrific.

MR. PEREZ: Thank you.

THE COURT: Thank you-all. Be adjourned.

MR. DURAN: Thank you.

COURTROOM DEPUTY: All rise.

(Hearing adjourned at 11:01 a.m.)

* * * * *

*I certify that the foregoing is a correct transcript to the best of my ability from the electronic sound recording of the proceedings in the above-entitled matter.*

*/S/ MARY D. HENRY*
*CERTIFIED BY THE AMERICAN ASSOCIATION OF ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
*JTT TRANSCRIPT #61309 DATE FILED: DECEMBER 9, 2019*